HENRY V. SCHNEIDER *vs.* CHICAGO, BURLINGTON & NORTHERN RAIL- ROAD COMPANY.

November 21, 1889.

**General Verdict with Incomplete Special Findings.**—Where the jury find a general verdict in favor of the plaintiff, but fail to agree upon a specific question submitted to them, the general verdict *is* properly re- ceived, unless a finding in favor of the defendant on the specific question submitted would be conclusive against plaintiff's right to recover.

**Railway—Negligence—Fellow-Servants.**—The defendant had operated its line of railroad from Chicago to St. Paul about six months, when plain- tiff was injured by the negligence of a co-employe while operating an en- gine hauling cars on a temporary track, for the purpose of filling in low land for a yard at St. Paul. *Held* not within the proviso to Laws 1887, c. 13, § 1, exempting a new road, or part thereof, not open to public travel or use, from liability to an employe for injuries sustained through the negligence of a co-employe.

Plaintiff brought this action in the district court for Ramsey county, to recover for injuries caused by alleged negligence of the defendant. Plaintiff was fireman on a locomotive attached to a train of gravel

cars employed in filling a low piece of ground in the construction of defendant's yards at St. Paul, the train working on a temporary construction track, which was moved from time to time as the filling progressed. The gravel train, consisting of flat cars, was loaded at a gravel pit by a steam shovel. The engine then pulled the train to the place for unloading. Here there was attached to the rear of the train a flat car, on which there was a so-called plough. One end of a cable was then attached to this plough, the cable thrown upon the flat cars, and the other end attached to the engine, which meanwhile was cut off from the gravel train. The engine was then started, and, by means of the cable, pulled the plough over the entire length of the gravel cars, which were thus unloaded. The whole process of loading, attaching the cable, cutting off the engine, and unloading did not occupy more than eight minutes, and the plaintiff was entirely familiar with it, and had frequently managed the engine in unloading. At the time of the injury the engine had been cut off from the train and the cable coupled to the plough, and the men were engaged in throwing the cable on the train, and plaintiff went out upon the pilot of the engine to sweep off sand, without directions from the engineer, and thinking he "would have ample time to do that work before they started." While he was thus engaged, the engine started, and the plaintiff was thrown off, and was run over by the engine, losing his right arm and sustaining other injuries. The negligence alleged in the complaint is that the engineer, "knowing that the plaintiff was at work on said engine, as above stated, carelessly and negligently and without ringing the bell or sounding the whistle, or in any other manner notifying or warning the plaintiff, (who had no knowledge or notice that said engine was to be thus started,) that he was ready to or was about to set said engine in motion, suddenly started said engine in motion along the track of defendant's said road."

At the trial, before *Wilkin, J.*, it appeared that the bell was not rung, but there was evidence on the part of the defendant that the whistle was sounded, and at the defendant's request the following question was submitted for a special finding thereon, in connection with their general verdict: "Did the engineer, Minehan, sound his

whistle before starting his engine, and after the conductor, Reece, had signalled to go ahead?" The jury returned a general verdict of $7,000 for plaintiff, with this answer to the special question: "On this question the jury cannot agree." The defendant objected to the verdict being received, because not complete, the special question not having been answered. The objection was overruled, the defendant excepting, and the verdict was received. A new trial was refused, and the defendant appealed.

*Young & Lightner*, for appellant.

*Lovely & Morgan, D. F. Morgan*, and *W. J. Trask*, for respondent.

GILFILLAN, C. J.[1] The questions of defendant's negligence, and contributory negligence of plaintiff, were on the evidence for the jury, and their finding was warranted by the evidence. The eighth assignment of error, based on the court's refusal to charge that "if the jury find that the engineer blew the whistle before starting the engine, then the plaintiff cannot recover," involves the question raised by the court receiving the general verdict, when the jury could not agree upon the special question submitted to them, "Did the engineer Minehan sound his whistle before starting his engine, and after the conductor Reece had signalled to go ahead?" If a finding that the whistle was so sounded would have been decisive against plaintiff's right to recover, either because establishing his contributory negligence or establishing that defendant was not negligent, then the request ought to have been given, and also the general verdict ought not to have been received without a finding upon the question specially submitted. But unless a finding on that question in the affirmative would have been inconsistent with and have controlled the general verdict, so that defendant would have been entitled to judgment notwithstanding the general verdict, then a finding on the question would have been immaterial. Had the evidence been such that the general verdict must rest solely on the fact that the whistle was not sounded, the verdict could not stand unless the jury could find that fact. The evidence, however, was such that the jury might find that defendant was and plaintiff was not negligent, even though the whistle was

---

[1] Collins, J., took no part in this decision.

sounded.   The significance of sounding the whistle or ringing the bell depended on its being the proper signal that the engine was about to start forward, so that those working about the engine or the train, hearing it, might take care of themselves.   As to which was the proper signal for starting ahead there was a conflict of evidence.   That on the part of the plaintiff was to the effect that the only customary and proper warning at that time and place, that the engine was about to start ahead, was by ringing the bell.   If that was the fact,—and on the evidence the jury might find it so,—it would justify the conclusions, the bell not having been rung, included in the general verdict, that there was negligence of defendant and none on the part of plaintiff; so that a finding in the affirmative on the question submitted would not have been inconsistent with the finding in the general verdict that there was negligence on one side and none on the other. However the jury might have answered the question, the plaintiff would have been entitled to judgment.   As the evidence stood, the question was not broad enough to cover the case.   The defendant claims that it is conceded by the complaint that if either the bell was rung or the whistle sounded there was no negligence on the part of the defendant.   However that might be upon a literal reading of the complaint, we are satisfied from the course of the trial that the same was not tried on that theory of the complaint, but on the theory that failure to ring the bell might be negligence, though the whistle was sounded.   The court was therefore right in receiving the general verdict, though the question was not answered.

The defendant claims that, with respect to the work upon which plaintiff was employed at the time of the injury, the case comes within the proviso to section 1, *c.* 13, Laws 1887,—the act which makes railroad companies generally liable for injuries done one of their employes through the negligence of a co-employe.   The defendant, in 1885, 1886, and 1887, built a new road from Chicago to St. Paul.   At the time of the injury it had been open to public travel and use for about six months.   It was filling a swampy piece of land in St. Paul for a yard, doing the work by means of a temporary construction track, and of engines and cars passing over it, carrying earth for the purpose of filling.   Of course, this temporary track was not open

to nor intended for public travel or use. The plaintiff was employed as fireman on one of the engines so used, and the negligence complained of was that of the engineer in starting his engine ahead without warning to plaintiff, who was at the time in a dangerous position. The proviso reads: "That nothing in this act shall be so construed as to render any railroad company liable for damages sustained by any employe, agent, or servant while engaged in the construction of a new road, or any part thereof, not open to public travel or use." It might have been difficult to determine what within the proviso is to be regarded as a new, as distinguished from an old, road, were it not for the words, "not open to public travel or use." The legislature manifestly intended that having the road so open should mark the difference between old and new, within the meaning of the proviso. The defendant's road, therefore, so far as thus open, to wit, from Chicago to St. Paul, was not a "new road," within the proviso. Taking it to be, between the termini mentioned, an old road, then work upon the yard at St. Paul, intended to be used in connection with, as a part of, and to facilitate the business of, such old road, was not the construction of a new road or part thereof. It is difficult to construe the proviso, except by adhering as closely as possible to its terms. We cannot see any entirely satisfactory reason as to its general purpose that would account for the distinction clearly made by its terms between constructing a new road or part thereof and constructing a part of an old road. Indeed, it would be hard to suggest any reason for the proviso, or for any difference in the liability of a railroad company, except such as might be based on the peculiar hazards attending the operating of engines and trains, —hazards which exist whether the engines and trains are operated in constructing a new road or in using one already constructed. That these were the dangers the legislature had in mind in passing the act was, in effect, held in *Lavallee* v. *St. Paul, M. & M. Ry. Co.*, 40 Minn. 249, (41 N. W. Rep. 974.) We cannot see why the proviso should exclude injuries from such hazards in constructing a new road. But the legislature has seen fit to do so. The case is not within the proviso.

Order affirmed.