WILLIAM HOLTZ v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 3, 1897.

Nos. 10,662—(51).

Railway—Injury to Employee — Negligence—Fellow Servant — G. S. 1894, § 2701.

In an action to recover damages for personal injuries caused by the alleged negligence of the defendant, *held*: (1) That, even assuming that defendant would be liable for negligence on part of its "foreman," whose acts resulted in the injury to plaintiff, there was no evidence of actionable negligence on his part.   (2) But, in the matter then in hand (assisting in the work of repairing a car), the foreman was a mere fellow servant

[1] Reported in 72 N. W. 805.

of the plaintiff.   (3) The work in which plaintiff was engaged involved no element of hazard or danger peculiar to the operation of railroads, and hence G. S. 1894, § 2701, does not apply.

Appeal by defendant from an order of the district court for Stearns county, Searle, J., denying its motion for a new trial after a verdict in favor of plaintiff for $4,500.   Reversed.

*C. Wellington* and *Wm. R. Begg*, for appellant.

*G. W. Stewart*, for respondent.

MITCHELL, J.[2]

The undisputed facts in this case are as follows:   The plaintiff had been at work for the defendant for seven years, his work during the last seven months being in the shops, and the last two weeks in the repair shop or shed.   On the day of the accident, he and three others employed by the defendant were engaged in repairing a car in the repair shed.   One of the four, named Youngheims, was the "foreman" of the gang.   One end of the car upon which the men were at work rested upon a pair of trucks upon the rails of the repair track, while the other end, the trucks being removed, was supported by trusses and jackscrews, in the manner shown by Exhibit A in the paper book.   Part of the work of repairs on this, as on other occasions, consisted of driving bolts from the inside through holes made for that purpose in the timbers of the bottom of the car, and then, from underneath, putting nuts on the projecting ends of the bolts. Bolts of different lengths were required, depending on the thickness of the timbers.   They had to project through the bottom of the car at least an inch and a half, in order to give sufficient space to put on a plate and nut.   The bolts used in repairing cars were kept in the shop in ricks or boxes, numbered so as to indicate their size.   The workmen could not always judge in advance of the exact length of bolt required, and it frequently happened that bolts were used that were an inch or so too long, in which case the man would cut off the end with a cold chisel after the plate and nut were put on and tightened up.   This was all known to the plaintiff.

Youngheims was inside the car, driving in the bolts, and plaintiff was under the car, on his knees, putting plates and nuts on the bolts

[2] BUCK, J., absent, took no part.

as they were driven through. Youngheims had driven in three bolts, and, needing the fourth, directed one of the workmen to go and get one of a certain size. The workman returned and reported, as the fact was, that there were none of that size in the ricks, whereupon Youngheims directed him to go and get one of another and larger size, which the workman did. Youngheims drove this bolt through the hole, and the projecting end of it came in contact with plaintiff's head, penetrated his skull, and caused the injury complained of. This bolt was about an inch longer than was necessary, as the evidence is that, after the plate and nut were put on it and tightened up, the man had to cut about that much off the end of it. Plaintiff did not know how near his head was to the timbers of the bottom of the car, and does not appear to have given any thought to that matter while engaged in his work.

It is impossible for the plaintiff to recover on this state of facts. Assuming, for the present, that the defendant would be liable for negligence on part of Youngheims, we fail to discover any actionable negligence on his part. We do not think that he could have reasonably anticipated that this or any other injury to any one was likely to result from driving in the bolt, even although the end of it would project through the timbers an inch more than was necessary. If it had been a great deal longer, the case might have been somewhat different, but, according to the evidence, it did not project materially further than other bolts had. So far from having reason to anticipate that plaintiff's head would be immediately under the hole into which the bolt was driven, and so nearly in contact with the timbers as to be struck by it, he might reasonably rely on plaintiff protecting himself against the known danger of his head coming in contact with bolts that were being driven down. It seems to us that the accident was one of those casualties for which no one is to blame, or else it was the result of plaintiff's own neglect to protect himself against a known danger.

But, even conceding the negligence of Youngheims, the defendant would not be liable. Nothing appears as to his powers or duties except the bare fact that he was "foreman" of the gang of men who were engaged in the work of repairing the car. Admitting that, in the performance of some other duties, he might have represented

the defendant as vice principal, yet, in the matter then in hand, to wit, assisting in the work of repairing the car by driving these bolts, he was a mere co-servant of the plaintiff. There was nothing in the situation that called into action any of the absolute duties of the master to his servant. The plaintiff knew, or ought to have known, as well as any one else, the danger of his head being struck by the end of a projecting bolt, whether it projected only an inch and a half, as it must necessarily do, or two inches and a half. The man inside the car, driving the bolts, could not know where plaintiff's head was. But plaintiff knew that bolts were being driven by some one, and the holes through the timbers, if nothing else, would indicate to him where the bolts were to be driven. He was therefore in a better position to protect himself than the master was to do so for him.

The common-law doctrine of fellow servant applies. The work in which the plaintiff was engaged exposed him to no element of hazard or condition of danger peculiar to the operation of railroads, and hence G. S. 1894, § 2701, has no application. The case is clearly distinguishable from Nichols v. Chicago, 60 Minn. 319, 62 N. W. 386; Mikkelson v. Truesdale, 63 Minn. 137, 65 N. W. 260; and Leier v. Minnesota, 63 Minn. 203, 65 N. W. 269,—relied on by counsel for plaintiff.

Order reversed, and a new trial ordered.