MARK M. KLINE v. MINNESOTA IRON COMPANY.[1]

July 22, 1904.

Nos. 13,910—(157).

**Private Mining Railway.**

    Schus v. Powers-Simpson Co., 85 Minn. 447, construing section 2701, G. S. 1894, imposing upon railway companies liability to its servants for injuries caused by the negligence of fellow servants, followed and applied.

**Statute Construed.**

    The proviso at the end of that statute construed, and *held* to fix a time when the act should be operative and have effect as to incomplete

[1] Reported in 100 N. W. 681.

railroads, and not as indicating an intention on the part of the legislature to apply it to railroad companies engaged in public traffic only.

Action in the district court for St. Louis county to recover $30,000 for personal injuries. The case was tried before Cant, J., and a jury, which rendered a verdict in favor of plaintiff for $5,000. From an order granting a motion for judgment in favor of defendant notwithstanding the verdict, plaintiff appealed. Reversed and judgment ordered for plaintiff.

*Samuel A. Anderson* and *Albert Baldwin,* for appellant.

*Billson & Congdon, Frank D. Adams,* and *Frank B. Kellogg,* for respondent.

BROWN, J.[1]

Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant, in which plaintiff had a verdict in the court below, and from an order granting judgment for defendant notwithstanding the verdict plaintiff appealed.

The facts are as follows: Defendant is engaged in the business of mining iron ore, holding, among other properties, that known as the "Adams Mine," situated near Eveleth, St. Louis county. In connection with its business it maintains and operates a railroad consisting of engines, cars, and employees necessary to operate the same. It is a narrow-gauge road. The engines are small, as are also the cars used thereon; the latter being of a dump-car variety. At the time complained of, the railroad and cars were being operated in the work of stripping the mine above mentioned, which consisted in removing the earth from the surface by means of steam shovels, depositing the same upon the cars, when they were run to a dump, a distance of about half a mile, and there unloaded, and returned to the mine. The entire track was about two or three miles in length. On the day in question two trains were being operated. As one was loaded at the mine and started on its journey to the dump to be unloaded, another train would be backed into the mine, and in turn proceed to the dump when loaded. Engines were attached to both ends of each train, and the trains were operated at a speed of about six or eight miles per hour, and were thus run both day and night.

Plaintiff was the engineer in charge of one of the engines attached to one of said trains. Associated with him was a brakeman, who had general supervision in the operation of the train, and did all necessary switching. The signals by which the trains were moved and brought to a standstill were the same as those used in ordinary railroad work. Plaintiff had been operating the engine in question for about two weeks prior to the time of the accident. At the time in question he backed to one of the switches, intending to go upon a side track to permit the other train to pass, but some part of the engine refused to work properly, and he stopped for the purpose of making temporary repairs. He did not complete the repairs, however, but ran his engine down to the usual stopping place, where he brought it to a standstill, and again went about the work of repairs, which required him to go partly under the engine with his tools. Before commencing this work, he observed the brakeman going toward the switch to turn it so that the other train could pass on to the dump with its load, and he supposed that he had performed that duty. But for some reason the brakeman failed to turn the switch, and the approaching train came on with considerable speed, striking the cars to which was attached the engine on which plaintiff was at work, forcing the same over his arm, and injuring it to such an extent that amputation was necessary, and bruising and wounding him in other respects. This action was brought to recover damages on the ground of the alleged negligence of plaintiff's fellow servants, solely by reason of which plaintiff was injured. Plaintiff had a verdict for $5,000, which was set aside by order of the trial court, and final judgment ordered for defendant on the ground, as we understand the memorandum of the trial court, that section 2701, G. S. 1894, as construed by this court in Schus v. Powers-Simpson Co., 85 Minn. 447, 89 N. W. 68, is unconstitutional and void. The sole question presented by the briefs of counsel in this court is the validity of that statute as applied to defendant and the railroad operated by it.

The statute provides:

Every railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by any agent or servant thereof by reason of the negligence of any other agent or servant thereof, without contributory negligence on his part,

93 M.—5

when sustained within this state, and no contract, rule, or regulation between such corporation and any agent or servant shall impair or diminish such liability: provided that nothing in this act shall be so construed as to render any railroad company liable for damages sustained by any employee, agent, or servant, while engaged in the construction of a new road, or any part thereof, not open to public travel or use.

This statute has been before the court in numerous cases, and we have uniformly held that it was intended by the legislature to apply to "railroad hazards," and not to railroads as such; that the character of the employment was the test to be applied in determining its validity, and not the character of the employer. It was first construed in Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249, 41 N. W. 974, where it was held that, if the statute be held to apply to railroad corporations, as such, it would be invalid and unconstitutional as class legislation, for it is beyond the power of the legislature to single out a particular class of employers, and impose upon them a distinct rule of liability for personal injuries; but, if construed to apply to the character of the employment, the legislation was valid. It was accordingly held in that case that the legislature intended that it should apply to the hazards and dangers peculiar to the use and operation of railroads, and the decision there made has been followed in all subsequent cases. In the case of Pearson v. Chicago, M. & St. P. Ry. Co., 47 Minn. 9, 49 N. W. 302, the court said: "The construction of this act has been considered by us in several cases, in which we have invariably held that it applies only to the peculiar hazards incident to the use and operation of railroads, and was designed exclusively for the benefit of those who, in the course of their employment, are exposed to such hazards and whose injuries are caused thereby."

The language of Judge MITCHELL, in the case of Johnson v. St. Paul & D. R. Co., 43 Minn. 222, 45 N. W. 156, very clearly states the rule which has since the Lavallee case been followed and applied in this state. He said: "If a distinction is to be made as to the liability of employers to their employés, it must be based upon a difference in the nature of the employment, and not of the employers. One rule of liability cannot be established for railway companies, merely as

such, and another rule for other employers, under like circumstances and conditions." In Blomquist v. Great Northern Ry. Co., 65 Minn. 69, 67 N. W. 804, it was said: "In order to sustain the law, we have, by judicial construction, limited its operation to those employés of railroads who are exposed to the peculiar dangers attending the operation of railroads, or what are, for brevity, called 'railroad dangers.' But, as the general language of the act has been thus limited for the sole purpose of sustaining its validity, we think it ought not to be limited further than is necessary for that purpose. We have held that the test is not whether the conditions are in some respects parallel to those to be found in some other kinds of business, or whether the appliances are, in some respects, similar to those used in some other kinds of business, but that, if there is any substantial element of hazard or condition of danger which contributed to the injury, and which is peculiar to the railroad business, the statute applies."

Following the rule of these cases, we held in the Schus case that the test in interpreting and construing the statute was, not whether the corporation engaged in operating the railroad was organized as a railroad corporation, but whether the road being operated was a railroad, within the meaning of the term, in and about the operation of which employees were exposed to those dangers and hazards against which the legislature intended to provide. It was held in that case that the statute applied to the defendant, a lumber company, which owned and operated a logging railroad in the conduct of its private business. It was not engaged in transporting freight or passengers for hire. Its operation of the road was limited exclusively to transporting logs to its sawmill. That case was followed and applied in Roe v. Winston, 86 Minn. 77, 90 N. W. 122, where the statute was held to apply to contractors engaged in the work of repairing the railroad, in and about which they had the use and operated and controlled a work train consisting of an engine and numerous cars, with engineer, conductor, and brakemen, who were in fact employees of the railway company, but during the progress of this particular work under the control of the defendants, the contractors in charge of the work. So there can be no question, under the rule established by the various decisions of this court, and which has been adopted and applied to similar statutes in other states, that the statute, to be constitutional, must be construed to

apply to all persons and corporations operating a line of railroad incident to which are the hazards and risks intended to be guarded against by the legislature.

It is urged with much earnestness by counsel for respondent that the effect of the proviso at the end of the statute has never been construed by any decision of this court, and it is insisted that the only meaning to be given thereto, consistent with the usual canons of statutory construction, limits the application of the statute to commercial railroads, and not to private roads, such as logging roads, or of the character of · that shown in this case. The proviso reads that the act shall not be construed so as to render any railroad company liable for damages sustained by an employee while engaged in the construction of a new road, or any part thereof, not open to public use. It is claimed that this clearly shows an intention on the part of the legislature to limit the operation of the act to railroads open to public travel and use, and that private logging railroads and similar railroads operated in connection with iron mines, not open to public travel, do not come within the statute. We do not concur in this contention. The proviso is in the nature of an exception or reservation, and serves merely to exclude from the operation of the act railroads which are in course of construction, incomplete, and not open to use. It cannot be construed as enlarging or explaining the meaning of the enacting clause of the statute, and the mere fact that it excludes from the operation of the act railroads not open to public use does not warrant the inference that the legislature intended the statute to apply solely to railroad companies organized for the purpose of doing a general commercial business, carrying passengers and freight for hire. The proviso simply exempts from the operation of the act the incomplete roads.

Private roads, such as logging roads or like that here under consideration, were unknown in this state at the time of the passage of the statute; and it goes without saying that the legislature did not intend to exclude them from the operation of the act. That class of roads has come into use since the enactment of the law, and, as held in the Schus case, are subject to the liability there imposed, at least when they are operating a road incident to which are the hazards and dangers contemplated by the legislature in the passage of the statute. The proviso must, therefore, be held, not as indicating an intention on the

part of the legislature to single out railroad corporations engaged in public traffic, and impose upon them liability for injuries caused to one servant by a fellow servant, but to establish a rule to protect employees in a hazardous and dangerous employment; and the exception of the incomplete road merely draws a line between the time when the act shall take effect as to the railroads in course of construction. When fully completed, and ready for operation, whether public or private enterprises, if in their operation servants are exposed to "railroad hazards," the statute applies, and they are liable.

Schneider v. Chicago, B. & N. R. Co., 42 Minn. 72, 43 N. W. 783, was a case where the railroad company was engaged in the construction of a spur track, and in the course of its work in that behalf one of its servants was injured by reason of the negligence of a fellow servant. The company was held liable, notwithstanding the fact that the spur track was but a part of its general railroad system, in the course of construction, incomplete, and not yet open to public or other use. If there be any force in appellant's contention, the decision in that case was erroneous; but it was in line with the other decisions of the court to the effect that it was not the railroad corporations the legislature had in mind in passing the statute, but the hazards and dangers to which employees are exposed. It may be that there are expressions in decisions of this court, and other courts where this question has been discussed, to the effect that the welfare of the public was an element considered in the enactment of the statute, and that it tends in large degree to insure the employment of experienced and skilled persons to manage and operate railroad trains, thereby better protecting the traveling public; but the statute has not been limited to employees operating trains, but has been applied to other classes of employees. In Steffenson v. Chicago, M. & St. P. Ry. Co., 45 Minn. 355, 47 N. W. 1068, the injury resulted from the negligence of a fellow servant of plaintiff in the operation of a hand car; and the court held, though public interests were in no manner endangered or involved, that the case came within the purview of the statute, and sustained the right of recovery. The rule of that case has been repeatedly followed in others. Kreuzer v. Great Northern Ry. Co., 83 Minn. 385, 86 N. W. 413.

It follows that the construction of the statute as given in the Schus case must be adhered to. It is in harmony with all our other decisions, and the only construction the statute will bear, as we view it, which renders it free from constitutional objections. No particular class of employers are thus selected and made liable to their servants for the negligence of their fellow servants, but a particular employment is made the basis of the legislation, and it is clearly within constitutional restrictions.

That the accident to plaintiff was the result of a risk and hazard incident to the operation of railroads, there is no question. He was engaged in repairing his engine. His body was partly under the car, and, without notice or warning, by reason of the negligence of the brakeman in charge of the train, his fellow servant, whose duty it was to turn the switch for the approaching train, he was injured. The accident is one peculiar to railroad work, and the risk one within the meaning of the statute.

It only remains to consider whether, in the operation of defendant's railroad, its employees are exposed to the risks and dangers intended to be guarded against by the legislature. As before stated, the road was of the narrow-gauge style; the engines, of which defendant had five, were small, each weighing about twenty tons; and the cars were small, so-called "dump cars," but they were coupled and uncoupled precisely as other cars, and the trains were operated as trains on other roads are operated, with the same signals and the same general management and control. The employees in charge of and operating them were exposed to many, though perhaps not all, of the risks and dangers incident to the operation of railroad trains generally. It is true there were no hand cars, no high embankments, no danger from excessive speed of trains; but the absence of some of these special risks is no reason for excluding the road from the operation of the statute, or distinguishing this from the Schus case. In the Schus case the railroad was nineteen or twenty miles in length, standard-gauge track, large engines and cars; but in the operation of the trains many of the dangers and hazards immediately connected therewith were the same as in the case at bar. And, so far as such dangers do exist, they are precisely similar to those surrounding those engaged in public traffic, though the opera-

tion of the latter is attended with many dangers and hazards to which the servants of defendant are not exposed.

Our conclusion is that the learned trial court was in error in holding that plaintiff was not entitled to recover, and the order made directing judgment for defendant notwithstanding the verdict is reversed, and the cause remanded for judgment in plaintiff's favor on the verdict.

Order reversed.

LEWIS, J. (dissenting).

I am thoroughly satisfied that the track and dump-car system employed by defendant in its mining operations is not a "railroad" within the legislative intent of the fellow-servant act. The following elements, which constitute the extra hazard and risk as defined by all of the previous decisions of this court, are absent in this instance: There was no dangerous rate of speed; the dump cars were moved at the rate of six or seven miles an hour. There was no continuous movement of trains at a great speed or at heavy momentum. The system is simple and compact. The tracks, engines, and equipment are of a diminutive character, such as employed to a greater or less extent by different corporations in the movement and disposition of earth, and were in no sense used by respondent to carry on a railroad business such as is contemplated by the act. There is an entire absence of the risk incident to landslides, washouts, defective bridges, high embankments, and trestles, which require the constant attention of watchmen and a repairing crew at a distance and unknown to the other employees. There is an absence of the risk resulting from the defects and mistakes arising from the telegraph service, and necessary dependence by such signals of one train upon the movements of another. The employees are all engaged in the same locality, and have the opportunity of becoming acquainted, and consequently there is an absence of that risk and hazard in connection with regular railroading which arises from the fact that employees are widely distributed, and unknown to each other.

There is a vast distinction between the plant or system employed by defendant and the logging railroad twenty nine miles long operated by defendant in Schus v. Powers-Simpson Co., 85 Minn. 447, 89 N. W. 68; and if this plant, consisting of dinky engines and dump cars, constitutes a railroad, within the meaning of the act, then I can see no stop-

ping place between such a road and any track or tramway whereupon anything is conveyed on wheels by a movable or stationary engine. There is no more hazard or risk in connection with the operation of the system now under consideration than the thousands of plants where a track is used to convey material and the propelling power furnished by a stationary engine and the cars are run by cable or gravity. While I am somewhat shaken in my views as to the result reached in the Schus case, yet it seems to me this case is not necessarily inconsistent therewith. We there held that the application of the act did not depend upon whether the road was a public commercial railroad or a private one; that, in harmony with the preceding decisions of this court, the distinguishing feature which made the act applicable was the extra hazard and risk attendant upon carrying on the business, and that it was immaterial that the road was owned and operated by private parties for their own use. In that case heavy trains were moved with great speed, and under a system of signals and switches similar to those used on commercial roads, and, while it may be difficult to draw the exact line of distinction, I believe that the border has been passed in this case, and that at some future time it will be necessary for the court to retreat from its present position.

I therefore dissent.