MICHAEL H. JEMMING v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 24, 1905.

Nos. 14,509—(125).

**Operation of Railroad—Fellow Servant.**

A crew of nine men, consisting of an engineer, a craneman, a fireman, two jackmen, and four pitmen, were engaged in operating a steam shovel in a gravel pit. The outfit consisted of a shovel, an engine house, which contained the engine which operated the shovel, an old engine tender, which contained the coal and water, and a caboose. It was all located upon a short track, which was made up of sections six feet long. As the work progressed, and it became necessary to move the shovel forward, a section of track was taken up from the rear and placed in front of the shovel. The track was in no way connected with any other track. About

[1] Reported in 104 N. W. 1079.

sixteen feet from the shovel outfit, there was a temporary track, upon which stood ballast cars, and this track was about eighty rods from the main railroad track, with which it connected at a point about one mile distant. The engineer employed and discharged the men and generally controlled the crew. He personally had charge of the work of moving the crane, and controlled the speed and course of the bucket attached thereto. Plaintiff, one of the pitmen, was injured by the negligent manner in which the engineer caused the bucket to swing from the ballast car into the pit. *Held*:

(1) That the plaintiff and his fellow servants were not at the time of the accident engaged in operating a railway.

(2) That the danger to which the plaintiff was subjected was not one of the hazards peculiar to the operation of a railroad, and therefore was not within section 2701, G. S. 1894.

(3) That the engineer was a fellow servant of the plaintiff, who was a pitman, and whose work it was, with the assistance of others, to take the six-foot section of track from the rear of the outfit, carry it forward, and fasten in position in front of the steam shovel.

**Pleading—Proof.**

The rule that where the complaint in an action to recover damages for personal injuries alleges specific acts of negligence the proof will be confined to the matters thus alleged, applied.

Action in the district court for Wright county to recover $5,000 for personal injuries. The case was tried before Giddings, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*F. E. Latham* and *James C. Tarbox,* for appellant.

*Rome G. Brown* and *Charles S. Albert,* for respondent.

ELLIOTT, J.

The plaintiff was injured while in the employ of the defendant railway company, and brought this action to recover damages on the ground of the alleged negligence of the defendant. At the close of the plaintiff's case, the court directed a verdict in favor of the defendant, and from an order denying a motion for a new trial, the plaintiff appeals to this court.

The facts are comparatively simple and easily understood. The plaintiff was employed by the defendant railroad company as a pitman with one of the steam shovel crews engaged in shoveling gravel from

.a gravel pit in New London. He commenced work on September 12, 1904, and was employed continuously from that date until October 10, when he was injured. The steam shovel outfit with which the plaintiff was working consisted of the shovel, an engine house, which contained the engine operating the shovel, an old engine tender, containing the coal and water for the use of the engine, and a sort of caboose. It was .a steam shovel such as is ordinarily used for similar work in places in no way connected with the railway business. The shovel was located upon sections of track about six feet long, which were not connected in any way with any other track. About sixteen feet from the shovel outfit, there was a temporary track, upon which stood ballast cars, and this track was about eighty rods away from the main railway track, with which it connected about one mile from the place where the steam shovel was located. The shovel worked into the bank immediately in front and on the left-hand side. In its operation the dirt was removed from the place immediately in front before commencing on the left-hand side. When enough had been removed from the front to make the necessary room, a section of the movable track was taken up from the rear of the outfit, carried forward by the pitmen, and placed in front of the shovel. The crew consisted of a fireman, engineer, craneman, two jackmen, and four pitmen, of whom the plaintiff was one. It was the duty of the pitmen to level off the place for a section of the track, and then pick up the ties and rails constituting the section, carry them around in front of the shovel, and put them in place. These rails were six feet long, and were fastened together by two bridle bars or pieces of iron, which could be moved forward and backward on the rail. The same section was used over and over again, as fast as the steam shovel moved ahead. The shovel was moved by the engine, which was used to do the digging.

The movements of the shovel were controlled by the engineer and the craneman. The engineer would swing the crane around, raise and lower it, and when the dipper was filled would raise it up, and swing it over the ballast car. He governed the speed and the height and course of the dipper. He hired and discharged the men constituting the crew, and was in general charge of the operation of the shovel. The crane-man attended to the raising and lowering of the dipper while they were dipping. As usually operated, when the men were in the pit, the shovel

was swung around from the ballast car over and across the track, then lowered at something like a right angle with its first course, then brought back towards the machinery, and pushed forward into the bank until the dipper was filled; after which it was raised up over the track, and back again to the car, where it was emptied.

On the day when the plaintiff was injured the shovel was being operated somewhat faster than usual. The plaintiff was in the pit, engaged in fixing the bridle bars, when the engineer brought the dipper down in an unusual course, "kind of cornerwise" from where it started, over the place where he was working, so that it would have struck him had he remained in that place. In trying to escape he fell on the track, and the dipper in its forward course towards the dirt struck him, and caused the injuries complained of. At the time of the accident both the ballast car and the steam shovel outfit were stationary, the machinery and crane mechanism only being in motion.

1. The appellant contends that the defendant was guilty of negligence in not framing such general rules and regulations as a prudent man would under the circumstances consider necessary and reasonable for the elimination of possible dangers and the protection of the employees. There is nothing in the record to show whether or not such rules were made in this instance. But the appellant is not in a position to predicate negligence upon the failure to make such rules, even if it appeared that none were made and promulgated. The allegation of the complaint is that,

> While plaintiff was so working, and while he was exercising ordinary care and caution, and without fault or negligence on the part of plaintiff in any manner whatever, defendant wrongfully and unlawfully, negligently and carelessly caused the heavy iron scoop or bucket for digging up and elevating the ground, with the heavy arm or lever by which it was operated, to descend in a sudden and unexpected manner upon the plaintiff.

The court will not consider acts of negligence not charged in the complaint. Connelly v. Minneapolis Eastern Ry. Co., 38 Minn. 80, 82, 35 N. W. 582; Morrow v. St. Paul City Ry. Co., 65 Minn. 382, 67 N. W. 1002. In the Connelly case the court used language which is equally

applicable to the case at bar. "The appellant in his brief relies to some extent upon the duty of the defendant to make and promulgate general rules for the conduct of its employees so far as might be necessary for the protection of co-employees. The case does not involve any such consideration. The complaint does not allege any neglect of duty on the part of the defendant in that respect, nor otherwise than in the movement of these cars on this particular occasion, nor was such a question litigated." For applications of this principle, see Chicago v. Bruley, 215 Ill. 464, 74 N. E. 441; Hudgins v. Coca Cola, 122 Ga. 695, 50 S. E. 974.

This leaves but two questions for consideration: (a) Did the work that plaintiff was engaged in involve hazards or dangers peculiar to the operation of railroads? And (b) if it did not, was the engineer of the steam shovel outfit a vice principal or a fellow servant.

2. Chapter 13, p; 69, Laws 1887 (G. S. 1894, § 2701), was enacted for the purpose of abolishing, under certain conditions, the common-law rule which exempts employers from responsibility for damages resulting from personal injuries occasioned by the negligence of a fellow servant.

(a) If the language of the statute had been given a literal construction, it would have applied to all the employees of railroad companies under all circumstances, whether the injury complained of was received in the course of the employment or otherwise. When the statute first came before the court in Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249, 41 N. W. 974, it was recognized that such a reading would render the act unconstitutional as class legislation. It was, however, to be presumed that the legislature did not intend the statute to be construed in such a manner as to destroy its validity. It was therefore held to be intended for the benefit only of such employees as were engaged in the extremely hazardous business of operating railroads. Thus limited, the act was constitutional. As said by Chief Justice Gilfillan:

"The frequency and magnitude of the dangers to which those employed in operating railroads are exposed; the difficulty—sometimes impossibility—of escaping from them with any amount of care when they come; the fact that a great number of men are employed, co-operating in the same work, so that no one of them can know all the others, their competency, skill, and care, so that he may be said to

voluntarily assume the risk arising from the want of skill or care by any one of the number—are a sufficient reason for applying a rule of liability on the part of the employer to the employee so employed different from that ordinarily applied between master and servant. But no just reason can be suggested why such difference should be founded, not on the character of the employment, nor of the dangers to which those employed are exposed, but on the character only of the employer." See Missouri Pac. Ry. Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161; Labatt, M. & S. § 643, et seq.

This case was followed in Johnson v. St. Paul & Duluth R. Co., 43 Minn. 222, 45 N. W. 156, where after full and careful reconsideration the statute was held to apply only to the employees of railway corporations exposed to the peculiar hazards connected with the use and operation of railroads. After noting the unsatisfactory efforts which had been made to apply other theories, Justice Mitchell said: "Therefore, after mature consideration, our conclusion is that, if any limitation is to be placed by the courts upon the application of this statute (and on constitutional grounds there must be), the only one which will furnish any definite or logical rule is to hold that it only applies to those employees who are exposed to the peculiar hazards incident to the use and operation of railroads, and whose injuries are the result of such dangers." The rule, as thus established, that the statute includes only the class of servants exposed to injury by the dangers peculiar to the use and operation of railroads, has never since been departed from by this court. Pearson v. Chicago, M. & St. P. Ry. Co., 47 Minn. 9, 49 N. W. 302; Weisel v. Eastern Ry. Co. of Minn., 79 Minn. 245, 82 N. W. 576; Holtz v. Great Northern Ry. Co., 69 Minn. 524, 72 N. W. 805; O'Niel v. Great Northern Ry. Co., 80 Minn. 27, 82 N. W. 1086; Kline v. Minnesota Iron Co., 93 Minn. 63, 100 N. W. 681. And see Akeson v. Chicago, 106 Iowa, 54, 75 N. W. 676.

The statute is held not to apply to street railways, although included within its general language, for the reason that their employees are not exposed to the hazards and dangers incident to the operation of ordinary railroads. Funk v. St. Paul City Ry. Co., 61 Minn. 435, 63 N. W. 1099.

In the Lavallee case the plaintiff at the time of his injury was employed as a boiler maker in the defendant's shops, and clearly did not

come within the statute. In the Johnson case plaintiff was one of a crew of men who were engaged in repairing a bridge on defendant's road, and in performing the work it was necessary to leave the draw partly open. Through the negligence of one of the crew, the draw was left unfastened. The plaintiff was at work between the stationary part of the bridge and the draw, when the wind blew the draw shut, and injured him. It was held that the injury was not caused by a hazard incident to the operation of a railroad, and there could be no recovery. In the Pearson case a crew of sectionmen were engaged in loading railroad iron from the ground upon a flat car, when some of the crew negligently let one of the rails fall upon plaintiff's arm. The risk was not in any way different from that to which any one is subjected who with others engages in loading or unloading ponderous articles. It was held that there could be no recovery. In Njus v. Chicago, M. & St. P. Ry. Co., 47 Minn. 92, 49 N. W. 527, the plaintiff was engaged in removing iron bars from a car to the ground, and it was held that he was within the statute as construed by the Supreme Court of Iowa, in which state the accident occurred.

In the Weisel case the plaintiff was one of the crew of a steam shovel working in a gravel pit, which was being operated in a manner very similar to the one in the case at bar. For the purpose of supplying water to the shovel, a locomotive was brought into the pit near the shovel, and a hose attached to the locomotive was carried to the boiler of the steam shovel. The water under steam pressure was thus forced from the locomotive to the shovel. The locomotive with the tender loaded with coal came into the pit, and remained stationary. The plaintiff picked up the hose, and handed it to another member of the crew, who was standing on the loose coal upon the tender. In handling the hose the man on the coal dislodged a piece of coal, which fell upon the plaintiff, and injured him. The risk to which the plaintiff was subjected was held not to be a railroad hazard, as the danger of the coal falling was no other, different, or greater in any respect than would exist in the case of a stationary coal bin in no way connected with a railroad.

In the Holtz case the plaintiff, with three other employees of the railroad company, were engaged in repairing a car in the repair shed. While under the car, engaged in putting plates and nuts on the bolts as they

were driven through by another employee, one of the bolts, being longer than the others, came in contact with plaintiff's head, and severely injured him. It was held not a railroad hazard.

In the O'Niel case the plaintiff, a section hand, was injured by coming in contact with a projecting bolt while engaged in removing a part of a railway bridge. The risk was not peculiar to railroading, but was incidental to the repair of a bridge.

The same construction has been placed upon the Iowa statute, which is like that of Minnesota. In Luce v. Chicago, 67 Iowa, 75, the plaintiff was employed to aid in coaling the defendant's engine. The engine and train were standing still alongside the coal shed. "While so employed hoisting coal for the purpose of filling a car, a co-employee so negligently managed a crane which they were using in the work that it struck the plaintiff's arm and broke it. The danger arising from the use of the crane does not appear to have been greater or less by the fact that it was used in loading a railroad car, nor does it appear that the plaintiff while engaged in his duties was exposed to any danger from the operation of the road. The case comes within" Malone v. Burlington, 61 Iowa, 326, 16 N. W. 203, 65 Iowa, 417, 21 N. W. 756, and Foley v. Chicago, 64 Iowa, 644, 21 N. W. 124. "In our opinion the evidence showed no liability." See also Nelson v. Chicago, 73 Iowa, 576, 35 N. W. 611, reversing Reddington v. Chicago, 75 N. W. 679, on rehearing.

In Smith v. St. Paul & Duluth R. Co., 44 Minn. 17, 46 N. W. 149, it was held not a necessary condition to the applicability of the statute that the employment of the servant injured and of the servant whose negligence caused the injury should be of the same kind. Both the servants whose conduct was in question were engaged in actual railroad operations.

There is another line of cases which illustrates the application of the statute. In Nichols v. Chicago, M. & St. P. Ry. Co., 60 Minn. 319, 62 N. W. 386, the plaintiff was employed as a wiper in a roundhouse, and was called by the foreman to aid in straightening a wire cable used to pull a plow in unloading gravel from flat cars in repairing the road. One end of the cable was attached to a switch stand, and the other to a locomotive, which pulled until the wire became taut. One of the employees pushed the cable off the end of the switch stand, and it swung

around, and broke the plaintiff's leg. The hazard was held peculiar to the railroad business; the court saying: "The test is not whether the conditions are in any respect parallel to those to be found in some other kind of business, or whether the appliances are in any respect similar to those used in some other kind of business. If there is any element of hazard or condition of danger which contributed to the injury, and which is peculiar to the railroad business, the statute applies. There certainly are such elements and conditions in this case."

In Mikkelson v. Truesdale, 63 Minn. 137, 65 N. W. 260, it appeared that the plaintiff was a "wiper," whose duty it was to assist in taking engines in and out of the roundhouse, and to the coal shed for coal. He was injured while assisting in coaling an engine by it being negligently moved by his co-servant, and it was held that the hazard was one peculiar to the operation of railroads.

In Leier v. Minnesota Belt Line R. & T. Co., 63 Minn. 203, 65 N. W. 269, the plaintiff was injured while attempting to step from a platform to the top of a passing car; under the orders of a conductor. Very naturally it was held that he was injured by reason of exposure to a railroad hazard.

In Blomquist v. Great Northern Ry. Co., 65 Minn. 69, 67 N. W. 804, the plaintiff, a sectionman, was employed in repairing the defendant's main track. The work had to be done with great and extraordinary haste, in order to avoid danger to trains that were or might be approaching. While engaged with other sectionmen in carrying a heavy iron rail, the plaintiff was injured by a fellow workman negligently releasing his hold on the rail and letting it fall. It was admitted that this was a close or "border" case, but it could be fairly said that the plaintiff's employment involved an element of danger peculiar to the railroad business, and intimately connected with, and growing out of, the operation of the road, to wit, "that he was engaged in repairing the track upon which trains were operated, and that, in view of that fact, the work had to be done with great and unusual haste, in order to avoid danger to trains that were or might be approaching."

The Blomquist case was followed in Anderson v. Great Northern Ry. Co., 74 Minn. 432, 77 N. W. 240. The plaintiff was engaged with others in repairing a portion of defendant's roadbed, and was injured by the negligence of a fellow servant in releasing a jack which held

up a portion of the track, which then fell upon the plaintiff's foot. For the purpose of bringing the case within the principle of the Blomquist case, it was alleged in the complaint that the work was being executed in great haste, so as to complete the work and replace the track before the arrival of any trains. This allegation was put in issue by the answer, and as the issues were presented, it was, under the evidence, a question for the jury whether or not the work in which the plaintiff was engaged at the time of his injury was being executed under such conditions and circumstances as to expose the plaintiff to the peculiar hazards incident to the use and operation of railroads, and whether he was injured as the result of such dangers.

The same principle was applied in Kreuzer v. Great Northern Ry. Co., 83 Minn. 385, 86 N. W. 413, where the plaintiff was injured, while at work clearing a wrecked train from the defendant's tracks, by the falling of a roof of a disabled car, caused by the negligence of a fellow servant. The wreck was an extensive one, and the tracks were covered with the disabled cars. The crew was called out in the middle of the night, and from all the circumstances it was apparent that the work was urgent, and that great haste was necessary in order to clear the track for the passage of expected trains. As in the Anderson case, it was clearly a question for the jury to say whether the work was being done under such circumstances as to expose the plaintiff to the hazards peculiar to operating a railroad.

In Lindgren v. Minneapolis & St. L. R. Co., 86 Minn. 152, 90 N. W. 381, the plaintiff, a sectionman, was injured through the negligence of a fellow servant while engaged in removing a hand car from the railroad tracks to make way for an approaching freight train; and it was held, following Steffenson v. Chicago, M. & St. P. Ry. Co., 45 Minn. 355, 47 N. W. 1068, that the case was within the statute, as removing the car from the track was a part of the operation of the car. See also Benson v. Chicago, St. P., M. & O. Ry. Co., 75 Minn. 163, 77 N. W. 789.

(b) The appellant also contends that the crew which was operating the steam shovel was operating a railroad, within the meaning of the statute as construed by the decisions of this court. We do not think that the steam shovel with its tender and sections of movable track can be thus dignified.

In Schneider v. Chicago, B. & N. R. Co., 42 Minn. 68, 43 N. W.
783, the plaintiff was injured by being thrown from the pilot of an
engine which was being operated upon a temporary construction track.
It was not questioned but that the defendant was operating a railroad,
but it was claimed that the proviso of section 2701 applied, as the road
was not open to public use. See also Moran v. Eastern Ry. Co. of
Minn., 48 Minn. 46, 50 N. W. 930, and Roe v. Winston, 86 Minn. 77,
90 N. W. 122.

The road under construction in Schus v. Powers-Simpson Co., 85
Minn. 447, 89 N. W. 68, was an extensive logging railroad, and it was
contended unsuccessfully that the statute did not apply to it, because
it was not organized as a railroad corporation, and was not engaged
as a common carrier of passengers and freight, but confined its rail-
road business exclusively to its own affairs. The Schus case was fol-
lowed in Kline v. Minnesota Iron Co., 93 Minn. 63, 100 N. W. 681,
where it appeared that the defendant was operating a narrow gauge
railroad, about two or three miles long, with a full equipment of cars
and engines. The only question involved was whether the statute ap-
plied to a private railway.

Under the construction thus given the statute and as applied in the
cases to which attention has been called, it is very clear that the danger
to which the plaintiff in this case was subjected was not one of the
hazards peculiar to the operation of a railway. It was such as is inci-
dental to the management of all machinery, and the accident would
have been as liable to occur had the steam shovel been operated by par-
ties not in the employ of a railway company, in excavating for a canal,
or for the foundation of a building. It was a hazard connected with
the operation of a steam shovel, and the mere fact that the shovel be-
longed to a railway company, and was being operated by its employees,
did not change its nature.

3. As the case does not come within the purview of section 2701, G.
S. 1894, it is necessary to ascertain whether the plaintiff and the engi-
neer, through whose negligence plaintiff was injured, were fellow serv-
ants.

The claim that the engineer was a vice principal cannot be sustained.
It is true that he was in charge of the crane, had power to hire and
discharge men, and was in a position of authority over the men. But it

can no longer be contended in this jurisdiction that mere superiority of rank creates the relation of vice principal. It is the established law of this state that it is not the rank of the employee nor his authority over other employees, but the nature of the duty or service that he performs, which determines whether he is a vice principal or a fellow servant. Labatt, M. & S. § 514, et seq; Cooley, Torts (2d Ed.) 640; 2 Jaggard, Torts, 1037; Dillon, article in 24 Am. L. R. 190. The law imposes upon the master certain absolute duties, and imperatively requires that he either perform them personally, or through some representative. If he chooses to delegate such duties to one of his employees, the delegate thus becomes his personal representative, and the master is responsible for the manner in which the duties are performed. As to this absolute duty, the obligation of the representative, whatever his rank as compared with other employees, stands in the place of the master; as to all other matters, he is a fellow servant of the other employees. He thus occupies a dual relation. To the extent to which the master's absolute duties are delegated to him he is a vice principal; where engaged with others in the common employment of the master he is a fellow servant. Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020; Perras v. A. Booth & Co., 82 Minn. 191, 84 N. W. 739, 85 N. W. 179; Brown v. Minneapolis & St. Louis Ry. Co., 31 Minn. 553, 18 N. W. 834; Ell v. Northern Pacific, 1 N. D. 336, 48 N. W. 222; Wood v. New Bedford, 121 Mass. 252.

In this case it was the absolute duty of the railway company to use proper care to furnish its employees with a reasonably safe place to do the work of the master, and proper machinery and appliances with which to work; and if the company had delegated the performance of this duty to the engineer, he would have been a vice principal in relation to such duties. But it is not charged that there was any failure in the discharge of such duties, as the negligence alleged is merely the improper handling of a part of the machinery in a particular instance. The swinging of a crane through the same course every time it is operated is the mere act of a workman, and not one of the absolute duties which the law imposes upon the master. It was the individual duty of the man who was placed in the position of engineer to do his work so as to avoid injury to his fellow workmen. If he failed to do this, and injury resulted thereby to another co-employee, it was the unfor-

tunate result of the casual negligence of the fellow servant, and there can be no recovery of damages from the master.

For the purpose of this case, it must be presumed that the machinery was proper, and was being operated in a proper place. The negligence, therefore, was in the improper use by one servant of a proper instrumentality, for which the master is not liable to the servant. It was the duty of the engineer to control the operation and movements of the crane. It was the duty of the plaintiff to aid in moving and placing the track. One was as much an individual duty as the other. No orders were given, so far as the record shows, by the engineer to the plaintiff. Each was employed to do his differential share of the labor of the common employment for the accomplishment of the ultimate object of such employment.

The facts bring this case squarely within the rule as stated in Borgerson v. Cook Stone Co., 91 Minn. 91, 97 N. W. 734: "As to those who are engaged with others in a common employment or in the details of the work, the performance of such duties, though different in kind, requires them to be regarded as fellow servants."

The court, therefore, properly directed a verdict, and the order denying the motion for new trial is affirmed.

Order affirmed.