# WILLIAM E. McCULLOUGH AND ANOTHER v. GEORGIA CASUALTY COMPANY.[1]

### May 25, 1917.

### Nos. 20,442—(227).

**Insurance — employer's liability — misrepresentation.**

The contractors for the construction of a highway, in their application for an insurance policy to cover risks under the Workmen's Compensation Act, stated that they did not "operate a steam or electric railroad, switch or sidetrack in connection with the risks." The policy issued and accepted contained the same language. They used and operated in their work "dinkey" steam locomotives drawing Peteler dump cars upon temporary tracks of steel rails and wooden ties. This

1Reported in 162 N. W. 894.

fact was not known to the insurer when the policy was issued. It is *held*: The statement was a misrepresentation of a fact material to the risk and made void the policy.

Action in the district court for Hennepin county upon defendant's policy of insurance to recover the amount of a judgment entered against plaintiffs in a proceeding under the Workmen's Compensation Act by the widow of John W. Fite, who was killed while in the employ of plaintiffs. The case was tried upon stipulated facts before Jelley, J., who ordered judgment in favor of defendant. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, plaintiffs appealed. Affirmed.

*Wright & Wright*, for appellants.

*Ernest E. Watson*, for respondent.

HOLT, J.

Plaintiffs in November, 1915, entered into a contract to build a highway near Wayzata, Minnesota, and thereupon applied to defendant, a casualty insurance company, for an insurance policy against risks growing out of the Workmen's Compensation Act. The application contained this statement: "The assured does not operate a steam or electric railroad, switch or sidetrack in connection with the risks described in statement 4, except as follows: Description—No exceptions." A part of the equipment to be used and used by plaintiffs in the prosecution of their work consisted of small steam locomotives, commonly called "dinkey engines," hauling Peteler dump cars upon temporary narrow gauge tracks of steel rails and wooden ties. Defendant issued its policy on the representations made, which are also embodied in the policy; but neither defendant nor its agents, in the transaction, knew that plaintiffs, in the conduct of their work, intended to use or used the equipment mentioned. Afterwards one John W. Fite, an employee of plaintiffs, met death by accident while operating one of the "dinkey" engines in the construction of the highway referred to, and plaintiffs were compelled to pay his widow the amount specified in the Workmen's Compensation Act. When notified of the accident to Fite defendant refused to recognize any liability, declined to defend

the claim for compensation made by the widow, repudiated the policy and tendered back the premium paid therefor, claiming that the policy had never become operative by reason of the representations above set out. This action is to recover the amount plaintiffs were compelled to pay the widow. Upon stipulated facts, in substance as stated, the court concluded that plaintiffs were not entitled to recover. They appeal.

The court below evidently came to the conclusion that the statement or representation above quoted in the application was a misrepresentation of a material fact connected with the risk. Plaintiffs, on the other hand, insist that their equipment of dinkey engines, dump cars and track does not fairly come within the meaning of the phrase "steam railroad" used in the application. The policy issued and accepted by plaintiffs provides that the risk is assumed "in consideration of the premium and of the statements contained in the schedule hereinafter set forth, which statements the assured makes and warrants to be true by the acceptance of this policy. The words of the application are made a part of the policy. Hence the language of the quoted statement must be given effect, and if not true the policy is avoided. No strained interpretation should be given the words used. It may be doubted whether their meaning, standing alone, is so clear as to exclude a consideration of surrounding circumstances and a reference to other provisions in the policy. The defendant was engaged in insuring against risks placed upon employers of labor by the Workmen's Compensation Act. Plaintiffs, employers of men, desired protection. Both necessarily understood that the dangers of the work affected the risk and the premium. Plaintiffs must have realized that the reference in their application to steam railroad would not be taken to mean a commercial railroad. Neither party could have had in mind that, in constructing a highway, it could possibly have been contemplated that the contractor might operate a commercial steam railroad. And both, no doubt, knew that in heavy grading work, such as building the modern highway, contractors commonly employ Peteler dump cars hauled by small steam locomotives on temporary rail tracks, and that there are certain dangers in operating locomotives upon temporary tracks quite similar to if not even greater than, those attending the operation of the commer-

cial railroad. We therefore conclude that the most natural construction to place upon the language found in the application and policy, in respect to the operation of steam railroad, is that it was not intended to refer to a commercial railroad, but to just such an outfit as plaintiff was making use of. Furthermore, and what perhaps is more persuasive, this court more than 10 years ago, in Kline v. Minnesota Iron Co. 93 Minn. 63, 100 N. W. 681, held an equipment precisely of the same nature as the one used by plaintiffs a railroad within the statute abrogating the fellow servant rule as to employees operating railroads. With this definition of a railroad and railroad risks in our court reports, it is likely that parties, thereafter, when using the same terms in contracts having to do with undertakings wherein the same means might be employed, intended to convey a meaning in harmony with the construction theretofore given by the court. We believe the language in the application and policy here was intended to refer to an equipment involving the usual railroad hazards, and these stand out conspicuously in the operation of the sort of a railroad used by plaintiffs on their work.

It is true that in the case cited, as well as in Schus v. Powers-Simpson Co. 85 Minn. 447, 89 N. W. 68, 69 L. R. A. 887, the court was considering and giving effect to a remedial statute. The same statute was involved in Funk v. St. Paul City Ry. Co. 61 Minn. 435, 63 N. W. 1099, 29 L. R. A. 208, 52 Am. St. 608, where it was held that it did not include employees on a street railway. The court in each case gave controlling weight to the evident intent of the legislature to protect against railroad hazards. So here, we think, great weight should be given to the intent and understanding of the parties as evidenced by the circumstances surrounding the transaction that the risk did not involve steam railroad hazards. We think the court below was right when holding that the representation must be taken to relate to such a railroad as might likely be used in the work plaintiffs had in hand. And to this class plaintiffs' equipment belonged.

In view of the conclusion we have reached, the remaining question, of attorneys' fees, needs no consideration.

The order denying a new trial is affirmed.