Sewing Machine Company, providing, among other things, for the transfer of the patents and patent rights to the defendant Parkes, which resolutions Maugham stated "were drawn up by me, and that the same are all right."

The attitude assumed by the plaintiffs in this matter in no way commends itself to the consideration of the court. Parkes' right, so far as we are now able to determine it, is made out, and he should not be embarrassed in his efforts to make what are conceded to be his valuable and useful patents available to himself or to some one else. The suggestion of a conspiracy between Parkes and others to take away the property of a corporation which belongs to it is not worthy of consideration, nor can the idea for a moment be entertained that the company, or the plaintiffs, or those whose duty it was to furnish the working capital, were prevented from doing so by reason of the neglect of Parkes to transfer to the company certain patents for improvements which he obtained after the formation of the company. As said before, the equities of the case are so strongly with the defendant Parkes that it would·be unjust to maintain an injunction against him.

The order must be reversed, with $10 costs and disbursements, and the motion for an injunction pending suit denied, with $10 costs. All concur.

(69 App. Div. 153.)

### NEW YORK COUNTY NAT. BANK v. AMERICAN SURETY CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 14, 1902.)

1. FRAUDULENT CONVEYANCES—KNOWLEDGE OF GRANTEE—EVIDENCE—SUFFICIENCY.

On an issue whether a chattel mortgage on a stock of goods was given with intent to hinder the mortgagors' creditors, in which purpose the mortgagee aided and assisted, it appeared that the mortgagor, being indebted to the mortgagee, had stated to him that he was unable to pay his debts and desired to secure the indebtedness, and that he tendered a demand note and chattel mortgage covering his entire stock. The mortgagor testified that he told the mortgagee that it was his purpose to force a settlement with other creditors for less than their indebtedness, which testimony was contradicted by the mortgagee. Held, that the issue was properly submitted to the jury.

2. SAME—GRANTOR'S INTENT—EVIDENCE—SUFFICIENCY

A finding of the jury to the effect that the mortgagor intended to delay and defraud creditors was justified.

3. SAME—SPECIAL QUESTION.

On an issue whether a mortgage given to a bank on a stock of goods was given to defraud creditors, in which purpose the mortgagee participated, the court submitted to the jury special questions as to whether the mortgage was given to delay creditors, and whether the mortgagee received it knowing it was made to delay creditors, and whether the mortgagee received the mortgage with intent to defraud creditors. A verdict was rendered in favor of the mortgagee, and the first question was answered in the affirmative, and the third in the negative, but the jury were unable to agree on the second. Held, that it was proper for the court to accept the verdict and relieve the jury from answering the second question, inasmuch as, it having been discretionary with the court whether to require the jury to render a special verdict on any question, it was equally discretionary to withdraw one or all questions.

**4. SAME—UNLAWFUL PREFERENCES.**

> Where a debtor gives a demand note and chattel mortgage to one of his creditors, there is no question of unlawful preference; the property being merely transferred as security, and no general assignment contemplated.

**5. SAME—PERSONAL PROPERTY LAW**

> Personal Property Law (chapter 417, Laws 1897) § 24, makes every transfer of personal property with intent to hinder or defraud creditors void, as against any one so hindered; but section 29 provides that the article shall not impair the title of a purchaser or incumbrancer for value, unless it appear that he had previous notice of his vendor's fraudulent intent. *Held*, that where one whose time note is held by another, on the surrender thereof, gives a demand note and chattel mortgage, there is a valuable consideration, within the meaning of the statute.

**6. SAME—EVIDENCE—SUFFICIENCY.**

> Personal Property Law (chapter 417, Laws 1897) § 24, provides that every transfer of personal property with intent to defraud creditors shall be void as to any one so defrauded; and by section 29 it is provided that the article shall not impair the title of the purchaser or incumbrancer for value, unless he had notice of the fraudulent intent of his vendor; and section 26 makes the existence of a fraudulent intent arising under the statute a question of fact, and not of law. *Held*, that where the issue was whether a mortgage given to a bank on a stock of goods had been fraudulent, to the knowledge of the mortgagee, and it appeared that the bank knew at the time the mortgage was given that the mortgagor was embarrassed and unable to pay his debts, and desired to secure the bank, the facts known to the mortgagee were not such as to render a verdict in its favor unwarranted.

**7. SAME—VERDICT—APPEAL—PRESUMPTION.**

> On an issue whether a mortgage given to a bank had been given to defraud creditors, to the knowledge of the mortgagee, the jury were asked whether plaintiff received the chattel mortgage knowing it was for the purpose of defrauding creditors, but failed to answer the question, and rendered a verdict in favor of the bank. *Held*, that the evidence being sufficient to sustain the general verdict, and no instruction having been asked for that the bank was not entitled to recover under its mortgage if it received the mortgage with knowledge of the fraudulent intent, and it being presumed from the general verdict that, if the question were involved, it had been passed on favorably to the bank, the general verdict would not be disturbed on appeal.

**8. SAME—GRANTOR'S FRAUDULENT PURPOSE—IMPUTATION.**

> On an issue whether a mortgage given to a bank was given to defraud creditors, of which intent the bank had notice, it was not error to refuse to instruct that the fraudulent purpose of the debtor was imputable to the bank by an acceptance of the security.

Appeal from trial term, New York county.

Action by the New York County National Bank against the American Surety Company of New York. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before PATTERSON, HATCH, INGRAHAM, and LAUGHLIN, JJ.

Stillman F. Kneeland for appellant.

John M. Bowers, for respondent.

LAUGHLIN, J. This is an action to recover damages for the seizure and conversion of goods by the sheriff under warrants of attachment issued against the property of the firm of J. Healy & Co.

The surety company, having indemnified the sheriff, became substituted as defendant, and took the appeal.

During the period of eight years prior to the 18th day of May, 1898, J. Healy & Co. had transacted a general banking business with the respondent bank, which had received their deposits, paid their checks, and from time to time discounted their paper. On the last-named day this firm was indebted to the respondent in the amount of $5,000 on two notes, each for $2,500. One of the notes was secured by an indorsement, and subsequently paid. The other was to grow due in June following, and it was not secured by indorsement or otherwise. One of the firm on this day called at the bank, and had an interview with its vice president. He said to the vice president, in substance, that his firm, which was in financial difficulties, and unable to pay its debts, wanted to protect the bank on this unsecured note. He tendered a demand note and chattel mortgage to secure the same, and requested a surrender of the time note. The vice president, in behalf of the respondent, accepted the demand note and chattel mortgage, delivered up the note, which had not matured, and caused the chattel mortgage to be filed immediately. The chattel mortgage covered the debtor's entire stock of goods, furniture, and fixtures, and delivery horses and wagons, together worth at least $9,000, and subsequently inventoried under the marshal's supervision at $13,023.81; but the vice president of the respondent was not informed at the time, and he did not know its value. He testified that both on the suggestion of the debtors, and to protect his bank, he authorized the foreclosure of the mortgage immediately upon its being recorded, and placed a marshal in charge of the property that day, and proceeded to take an inventory. The bank officials were also informed that the debtors executed and contemplated executing other chattel mortgages on the same property to secure other creditors. On the day following, the sheriff levied on the property by virtue of these warrants of attachment issued in actions brought by general creditors against the firm. After the recovery of judgments by the attaching creditors, the sheriff sold the property under his levies, and realized thereon more than the claim of the respondent, to secure which the chattel mortgage was given. The plaintiff claimed the right to possession of the property by virtue of its chattel mortgage. The defendant maintained that there was no consideration for the chattel mortgage, and that it was given by J. Healy & Co. with intent to hinder, delay, and defraud their creditors, and accepted by the respondent, as their agent, for the purpose of aiding and assisting them in so doing. The evidence tended to show an intent on the part of the failing debtors to hinder, delay, and defraud their unsecured creditors, and the finding of the jury to that effect was justified.

We have stated the evidence, as given by the bank officials and agents, relating to the transaction between the debtors and the respondent which resulted in the surrender by the latter of the time note, and acceptance of the demand note and chattel mortgage, and the proceedings thereunder, and the knowledge and information possessed by the respondent as to the financial embarrassment of the

debtors, and their motive in thus giving a preference to the bank. The debtor who negotiated the transaction with the bank testified, in substance, that he informed the vice president of the bank of their purpose to force a settlement with their other creditors for considerably less than their indebtedness, but this was flatly contradicted by the testimony of the vice president. The evidence required the submission of the case to the jury, and therefore the exceptions to the refusal of the court to dismiss the complaint were not well taken.

The court directed the jury, in addition to rendering a general verdict, to make three special findings on the following questions, to wit:

"(1) Did the firm of Healy & Co. deliver the chattel mortgage in question for the purpose of hindering, delaying, and defrauding their creditors? (2) Did the plaintiff bank receive the chattel mortgage, knowing that it was made for the purpose of hindering, delaying, and defrauding the creditors? (3) Did the plaintiff bank receive the chattel mortgage with the intent of aiding or assisting in hindering, delaying, and defrauding the creditors of Healy & Co.?"

The jury rendered a general verdict in favor of plaintiff, and answered the first question in the affirmative, and the third in the negative, but were unable to agree on the second. The court accepted the verdict, and relieved the jury from answering the second question, to which ruling appellant's counsel excepted. This exception presents no error. It was discretionary with the court whether to require the jury to render a special verdict on any question, in addition to the general verdict, and it was equally discretionary with the court to withdraw one or all such special questions from their consideration.

On account of the fraudulent intent of the debtors, as found by the first special finding of the jury, the chattel mortgage would become void by virtue of section 24 of the personal property law (chapter 417, Laws 1897), were it not for section 29 of said law, which provides as follows:

"Bona Fide Purchasers. This article does not affect or impair the title of a purchaser or incumbrancer for a valuable consideration, unless it appears that such purchaser or incumbrancer had previ·us notice of the fraudulent intent of his immediate vendor, or of the fraud rendering void the title of such vendor."

The jury having found, both by the general verdict and specially, that the respondent did not participate in the fraudulent scheme, purpose, or intent of J. Healy & Co., it follows that the sole purpose and object of the bank were to secure payment of the note held by it. There is no question of unlawful preference here. The property was merely transferred as security, and no general assignment was contemplated or executed. Even if the question were presented, it probably would not avail the appellant in this action, as it represents creditors who themselves have obtained a preference. Maass v. Falk, 146 N. Y. 34, 40 N. E. 504; Abegg v. Bishop, 142 N. Y. 286, 36 N. E. 1058; Bank v. Seligman, 138 N. Y. 735, 34 N. E. 196. This case is to be distinguished from those where parties having prior equities are asserting them, as by seeking to recover their own property or securities fraudulently appropriated or diverted, or are defending themselves against liability on their own

obligations likewise appropriated or diverted, for here the attaching creditors had no prior equities. Archer v. O'Brien, 7 Hun, 146, 149. ·The $2,500 time note held by the respondent constituted a valid, subsisting obligation. It was surrendered and extinguished, and a new note, with security, to insure the payment of an honest indebtedness, was given and accepted. This constituted a valuable consideration, within the intent and meaning of the statute quoted. Youngs v. Lee, 12 N. Y. 551; Insurance Co. v. Church, 81 N. Y. 218, 37 Am. Rep. 494; Archer v. O'Brien, supra; Treusch v. Ottenberg, 4 C. C. A. 629, 54 Fed. 868; Mayer v. Heidelbach, 123 N. Y. 342, 25 N. E. 416, 9 L. R. A. 850; In re Utica Nat. Brewing Co., 154 N. Y. 268, 48 N. E. 521; Bank v. Sherwood, 162 N. Y. 310, 318, 56 N. E. 834.

Thus the first provision of.the statute last cited, relating to consideration, is satisfied; and it only remains to be seen whether the verdict establishes the fact that the respondent did not have previous notice of the fraudulent intent of J. Healy & Co., within the fair intendment of the statute, and, if so, whether such finding is supported by the evidence. By section 26 of the personal property law, the question of the existence of a fraudulent intent, arising under the second article of that statute, is expressly declared to be a question of fact, and not of law. The express knowledge which the respondent concededly had that its debtors were embarrassed and unable to pay their debts, and desired to secure the bank, did not necessarily charge the respondent with knowledge of the fraudulent intent of the debtors; for those facts, in and of themselves, did not constitute fraud. Bank v. Bolton, 20 App. Div. 70, 46 N. Y. Supp. 734, affirmed in 162 N. Y. 310, 318, 56 N. E. 834. In Maass v. Falk, supra, unsecured time notes were surrendered, and secured demand notes substituted therefor; but this was not considered a suspicious circumstance, and there was a finding of freedom from fraud on the part of both debtor and creditor. A failing creditor has a right to protect certain of his creditors in preference to others; and even though the debtor is actuated by an intent to hinder, delay, and defraud other creditors, one creditor has the right to accept the payment of his claim in full, or security or a confession of judgment therefor, so long as this is done without knowledge on his part of the fraudulent intent of his debtor, or participation therein. Manning v. Beck, 129 N. Y. 1, 29 N. E. 90, 14 L. R. A. 198; Galle v. Tode, 148 N. Y. 270, 42 N. E. 673; Starin v. Kelly, 88 N. Y. 421. As against the claims of a party having no prior equity, a creditor is not necessarily put upon his inquiry concerning the notice of the debtor in giving him security. Archer v. O'Brien, supra. All that took place between the failing creditors and the bank, according to the testimony presented by the respondent, was consistent with good faith on the part of both parties. The good faith of the bank is, as has been seen, clearly established by the general verdict.

There could be no question but that the verdict is right, were it not for the fact that the jury announced their inability to agree upon the second question, and were relieved from answering it. It

is urged that the jury have therefore rendered a general verdict against appellants, without having passed upon the question as to whether the respondents were aware of the fraudulent intent upon the part of their debtors. This may be so, but the presumption from the general verdict is that, if this were necessarily involved, it has been passed upon favorably to the respondent. Where the creditor does not participate in the fraudulent intent of his debtor, as has been specially found by the jury in the case at bar, but takes the property as security for the sole purpose of satisfying or securing an honest debt, it has been held that his knowledge of the fraudulent intent of the debtor is immaterial. Dudley v. Danforth, 61 N. Y. 626; Banfield v. Whipple, 96 Mass. 13; Carr v. Briggs, 156 Mass. 78, 30 N. E. 470; State v. Mason, 112 Mo. 374, 20 S. W. 629, 34 Am. St. Rep. 390; Sexton v. Anderson, 95 Mo. 373, 8 S. W. 564; Hasie v. Connor, 53 Kan. 713, 37 Pac. 128. No request was made on the part of appellant to have the jury instructed that respondent was not entitled to recover if it received the chattel mortgage with knowledge of the fraudulent intent of the mortgagors in executing and delivering the same, which would have squarely presented the question. If we were prepared to disagree with the authorities last cited, we would scarcely be justified, in this condition of the record, in setting aside a verdict which is fairly sustained by the evidence, upon the theory of prejudice resulting to the appellant in this regard. The jury may not have fully comprehended the meaning of the second request, and, since the matter might have been rectified upon the trial, the respondent should not suffer.

The views already expressed show that there was no error in the refusal of the court to charge, as matter of law, that the fraudulent purpose of the debtors was imputable to the respondent, on account of its having accepted the security voluntarily given. That was fairly a question for the jury.

The judgment and order should be affirmed, with costs. All concur.