87 N.J. Super. 452 (1965)
209 A.2d 836
WILLIAM BREE, PLAINTIFF,
v.
JOSEPH JALBERT AND MILLA JALBERT, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
PACCO CONTRACTING COMPANY, INC., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 27, 1965.
*456 Mr. Sidney Slauson and Mr. David Cohn argued the cause for plaintiff (Mr. Sidney Slauson, attorney; Messrs. David & Albert L. Cohn of counsel; Mr. Daniel Crystal, on the brief).
Mr. Frank W. Cerutti argued the cause for defendants (Messrs. DeSevo & Cerutti, attorneys).
Mr. James G. Pappas argued the cause for third-party defendant.
BOTTER, J.S.C.
Plaintiff has moved for a new trial following a jury verdict of no cause for action on plaintiff's claim for serious personal injuries suffered in a fall on premises owned by defendants Milla and Joseph Jalbert (hereinafter called Jalbert). This was the second trial of the cause, the first having ended when the jury was unable to agree upon a verdict. This time, pursuant to R.R. 4:50-2, the court submitted to the jury four written interrogatories as well as a form of general verdict. The jury returned the general verdict, but without answers to the interrogatories. This opinion deals with plaintiff's contention that the jury's failure to answer the interrogatories warrants a new trial.[1]
Plaintiff was a tenant in a garden apartment complex on West Madison Avenue in Dumont, New Jersey, owned by the Jalberts. Plaintiff contends that on August 10, 1962, around 9:30 P.M., he parked his car in the common parking area provided for tenants. He testified that he stepped out of his car into an accumulation of water on the parking area and started to walk toward his nearby apartment. The water covered his shoetops, he said. He testified that when he was about nine feet from the curb he slipped and fell, having stepped on mud, oil and grease lying under the water. He testified that after arising he took another step forward and *457 again slipped and fell on the combined substances  the mud, water, oil and grease. It was plaintiff's contention that this condition was caused by improper drainage which permitted rainwater to accumulate along the length of the curb on the easterly side of the parking area and which tended to wash dirt, grease and oil into that portion of the parking area. He contended, further, that the Jalberts were negligent in furnishing inadequate lighting for the area in question.
The Jalberts denied negligence and asserted the defense of contributory negligence. They also brought a third-party complaint against Pacco Contracting Company, Inc. (Pacco), the contractor who graded and paved the parking area. The Jalberts contended that Pacco did its work in an improper manner and that Pacco agreed to return to make corrections but failed to do so. The Jalberts claimed indemnification from Pacco for any judgment recovered by plaintiff against Jalbert and, in the alternative, claimed contribution from Pacco as a joint tortfeasor. After Pacco was brought into the case as a third-party defendant, plaintiff also asserted a claim against Pacco based upon improper grading and paving. Pacco denied liability, contending that the elevations which determined the grade or pitch were established by Jalbert, and that in laying the subbase and the asphalt pavement Pacco merely followed the instructions of Jalbert as to such elevations.
Jalbert admitted that water did accumulate along the curb, but denied plaintiff's contention that it extended ten feet from the curb in the area where plaintiff claims to have fallen. Jalbert presented evidence to show that the area was cleaned regularly and that mud and grease were not washed into the area where plaintiff parked. Jalbert contended that the actual cause of plaintiff's fall was not the mud and grease but his attempt to jump over a puddle of water near the curb. In support of the defense of contributory negligence it was established that plaintiff knew of the conditions of which he complained for a long time, that he saw the water there on the night in question, and that he made no effort to hold on *458 to his car or the adjacent car when walking toward his apartment. Plaintiff admitted that he parked in a vacant spot near his apartment partly as a convenience to himself because he had suitcases in his car, but he also asserted that this was the only parking space available at the time and that he could not feasibly avoid the water in getting to his apartment. To the extent the jury believed that plaintiff did attempt to jump over the puddle it could have found that this was evidence of contributory negligence on his part.[2]
At the end of plaintiff's case, and again at the end of all the proofs, motions were made for judgment against plaintiff on the ground that he was contributorily negligent as a matter of law. These motions were denied. The court ruled that it was for the jury to determine whether or not in the circumstances plaintiff exercised reasonable care for his own safety when walking into a known danger or by the manner in which he proceeded in view of the known danger. See McGrath v. American Cyanamid Co., 41 N.J. 272, 275 (1963); Snyder v. I. Jay Realty Co., 30 N.J. 303, 316 (1959); Benton v. Y.M.C.A., 27 N.J. 67 (1958); Bates v. Valley Fair Enterprises, Inc., 86 N.J. Super. 1 (App. Div. 1964); but cf. Rado v. Zlotnick, 7 N.J. Super. 197 (App. Div. 1950), certification denied, 5 N.J. 346 (1950).
Defendants also moved to have the lighting issue withdrawn from the jury, urging that as a matter of law the lack of adequate lighting could not have been a proximate cause of the accident. Plaintiff said he knew the water was there and that he knew mud and grease collected under the water after rainstorms. It seems unlikely that adequate lighting would have better forewarned plaintiff of the conditions under the water on the night in question. Generally speaking, there is *459 no need to give notice or warning of a danger that is known. McGrath v. American Cyanamid Co., supra, 41 N.J., at p. 275. Nevertheless, pursuant to R.R. 4:51-2(a) the court reserved decision on this motion and let the issues of the lighting and proximate cause go to the jury.[3] Because of this it became necessary to know, in the event of a verdict for plaintiff, whether the verdict was based upon the alleged inadequate lighting or improper drainage or both. This was one reason for submitting written interrogatories to the jury.
There was another reason. The issue of Pacco's liability was put to the jury, without objection, in the following manner. If in grading and paving the parking area Pacco, at the direction of Jalbert, followed the elevations established by Jalbert, Pacco would not be liable to plaintiff, or to Jalbert in the third-party action, because Pacco did not construct something inherently dangerous; but Jalbert alone, as the landlord, would have been responsible for the consequences of the inadequate drainage. See Lydecker v. Board of Chosen Freeholders of Passaic, 91 N.J.L. 622 (E. & A. 1918); Prosser, Torts (3d ed. 1964), sec. 99, p. 695.[4] However, if Pacco negligently established the elevations and the resultant pitch of the parking area, Pacco as well as Jalbert would have been responsible to plaintiff, and Jalbert in turn would have been entitled to full indemnification from Pacco, provided Jalbert had not been independently negligent in a manner that contributed to the accident, specifically, by inadequately *460 lighting the parking area. See Mayer v. Fairlawn Jewish Center, 38 N.J. 549 (1962). If the accident was proximately caused by negligent lighting as well as negligent drainage, both Pacco and Jalbert could have been held liable as joint tortfeasors, and in such event Jalbert would have been entitled merely to contribution from Pacco under the Joint Tortfeasors Contribution Law, N.J.S. 2A: 53A-1 et seq., but not to full indemnification. Mayer v. Fairlawn Jewish Center, supra, 38 N.J., at p. 563. Thus, knowing the basis of the jury's finding on the issue of negligent lighting was essential not only as it related to the court's reservation on the motion to remove this issue from the jury but also as it related to the landlord's independent negligence and its effect upon liability of the parties in the main case as well as in the third-party action.
Pursuant to R.R. 4:50-2,[5] the court on its own motion prepared and submitted to the jury written interrogatories and a form of general verdict. The written interrogatories contained four questions asking (a) whether Jalbert was negligent in failing to provide proper grading and drainage in the parking area; (b) if so was such negligence a proximate cause of the accident; (c) whether Jalbert was negligent *461 in failing to provide proper lighting for the parking area so that the alleged unsafe conditions could be readily seen, and (d) if so, was such negligence a proximate cause of the accident. Significantly, no question was put to the jury on the issue of contributory negligence. The form of general verdict allowed a choice of three verdicts: (a) no cause for action against any defendant, (b) in favor of plaintiff against Jalbert alone, or (c) in favor of plaintiff against both Jalbert and Pacco. A form of general verdict was also supplied for the third-party action.
Plaintiff made no motions at the end of all the proofs and made no objection to the court's charge, nor to the form of interrogatories and general verdict submitted to the jury. The court fully charged the jury and, as required by R.R. 4:50-2, instructed the jury to answer the written interrogatories and to return a general verdict. After approximately two hours of deliberation the jury returned a verdict of no cause for action, handing up the form of general verdict appropriately marked, with the form of interrogatories unmarked. Upon inquiry from the court the foreman advised that the written interrogatories were not answered. At this juncture plaintiff made no objection and made no request for further action with respect to the jury's failure to answer the interrogatories. The court accepted the verdict without further inquiry as to the interrogatories, and the trial was ended.
Plaintiff now contends that the jury's failure to answer the interrogatories renders its general verdict defective. Plaintiff argues that R.R. 4:50-2 makes it mandatory for the jury to answer the interrogatories; that its failure to do so was a violation of that rule and the court's charge, and that the verdict should be set aside and a new trial granted because the jury did not follow the court's instructions. Plaintiff relies upon the principle that inconsistent verdicts must be set aside. It is also contended that the use of interrogatories serves as a check upon the jury's verdict, and that this purpose has been frustrated by the jury's failure to answer the interrogatories.
*462 Obviously, R.R. 4:50-2 does not expressly provide for the failure of a jury to answer the propounded interrogatories. Nor has any reported decision in New Jersey dealt with R.R. 4:50-2 in this context. In a number of cases the use of this rule has been encouraged,[6] but New Jersey courts have not yet been faced with the variety of problems attendant upon its use.[7] It may be helpful, therefore, to consider the genesis of the rule.
Having the jury make special findings without rendering a general verdict (i.e., a special verdict, R.R. 4:50-1) or in addition to a general verdict reflects an ancient practice that has taken many forms. The question has always been whether juries should simply make findings of fact or should return a general verdict amalgamating the facts and the law. Professor Morgan, in "A Brief History of Special Verdicts and Special Interrogatories," 32 Yale L.J. 575 (1923), says that in England by the end of the 12th century and during most of the 13th century at least five forms of verdict were used.[8] Jurors themselves at an early date asserted the right to make only special findings of fact for fear that if they erred in *463 reaching the ultimate legal conclusions they would be punished for rendering a "false verdict"; and chapter 30 of the Statute of Westminster II, enacted in 1285, protected the right of a jury to return a special verdict in certain cases covered by the statute, although preserving the right of jurors to render a general verdict "at their peril." Albro Clem Elevator Co. v. Director General, 95 N.J.L. 342, 344 (Sup. Ct. 1920); Traflet v. Empire Life Ins. Co., 64 N.J.L. 387, 393 (Sup. Ct. 1900); Morgan, supra, 32 Yale L.J., at pp. 576-577, 586, 587.
It was common for judges to interrogate jurors who returned a special verdict, and for the jurors to answer. Jurors were also questioned, though less frequently, when they returned a general verdict. See Turon v. J. & L. Construction Co., 8 N.J. 543, 551 (1952). Professor Morgan refers to an anonymous case in 1293 where a jury was threatened to be shut up without food or drink until morning unless it explained the basis for its general verdict, and the jury complied.[9] Nevertheless, at common law almost from the beginning the jury had the right to return a general verdict in all civil cases. Morgan, supra, 32 Yale L.J., at p. 591. Professor Morgan states that ultimately in England the general verdict reached a point of ascension which permitted the jury to decline to return anything but a general verdict; and without the consent of the parties and the jury the judge could not require the jury to return answers to special questions with their general verdict. Ibid., at p. 592; see also Wicker, "Special Interrogatories to Juries in Civil Cases," 35 Yale L.J. 296, 297 (1926). Two cases are cited for these conclusions, Mayor and Burgesses of Devizes v. Clark, 3 Ad. & E. 506 (K.B. 1835), and Walton v. Potter, 3 Man. & G. *464 411, 433, 444 (C.P. 1841).[10] In Mayor and Burgesses of Devizes v. Clark, supra, the court upheld a general verdict although the jury refused to answer the one specific question submitted, which dealt with the controlling factual issue in the case. It was held that the jury had a right to refuse to answer the question and that the general verdict implies that the jurors did answer the question although they refused to do so expressly.
The development in the United States has followed a course that has sought to accentuate the use of special verdicts and interrogatories. From the custom of interrogating a jury on the return of a general verdict there was derived at common law in the United States the practice of submitting special interrogatories to the jury and requiring that their answers accompany the general verdict. See Walker v. New Mexico & So. Pac. R.R. Co., 165 U.S. 593, 17 S.Ct. 421, 41 L.Ed. 837 (1897); Morgan, supra, 32 Yale L.J., at p. 592; Wicker, supra, 35 Yale L.J., at p. 297. This right to propound special interrogatories now exists as a discretionary right by statute or rule of court in the federal courts and in most states. In a minority of six states litigants are accorded a mandatory right to have proper interrogatories submitted to the jury on request.[11] See Note, 47 Va. L. Rev. 1439, 1440, fn. 6 (1961). The use of this procedure has been championed by many, particularly by those skeptical of the *465 jury product. See Skidmore v. Baltimore & Ohio R.R. Co., supra, opinion of Circuit Judge Frank. But, although Federal Civil Rule 49(b) and various state jurisdictions prefer answers that are consistent with each other over a general verdict that is inconsistent with such answers, the courts have continued to recognize the pre-eminence of the general verdict. The general rule is:
"Every reasonable intendment should, however, be indulged in favor of the general verdict in an effort to harmonize it with the answers to the interrogatories, and the latter should be held controlling only `where the conflict on a material question is beyond reconciliation on any reasonable theory consistent with the evidence and its fair inferences.'"
5 Moore, Federal Practice (2d ed. 1964), par. 49.04, p. 2211, citing Theurer v. Holland Furnace Co., 124 F.2d 494 (10 Cir. 1941); Arnold v. Panhandle & Santa Fe Ry. Co., 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889 (1957); Morris v. Pennsylvania R.R. Co., 187 F.2d 837 (2 Cir. 1951); Bass v. Dehner, 103 F.2d 28 (10 Cir. 1939), certiorari denied 308 U.S. 580, 60 S.Ct. 100, 84 L.Ed. 486 (1939); Flusk v. Erie R.R. Co., 110 F. Supp. 118 (D.C.N.J. 1953); Klever v. Reid Bros. Express, 151 Ohio St. 467, 86 N.E.2d 608 (Sup. Ct. 1949); Greiner v. Greiner, 129 Kan. 435, 283 P. 651 (Sup. Ct. 1930); see also Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); Thayer v. Denver & Rio Grande R.R. Co., 25 N.M. 559, 185 P. 542 (Sup. Ct. 1919) and Bolan v. Lehigh Valley R.R. Co., 167 F.2d 934 (2 Cir. 1948). A number of other problems in the use of special findings have been resolved by the assertion of the general verdict's supremacy.
New Jersey law from the beginning seems to have recognized optional forms of special findings, but the sparcity of reported decisions suggests little use in actual practice. The special verdict was part of our common law inheritance. In Watkins v. Pintard, 1 N.J.L. 378 (Sup. Ct. 1795), the court held that a trial judge "might recommend to the jury *466 to find a special verdict against the consent of either or even both of the parties." See also Traflet v. Empire Life Ins. Co., supra, 64 N.J.L., at p. 392. The Practice Act of 1903, L. 1903, c. 247, sec. 159, like the Statute of Westminster II, supra, provided that a jury could not be compelled to render a general verdict but might find a special verdict; but it also provided, "if of their own will they give a general verdict, the same shall be received." This statute has been continued to date through R.S. 2:27-237 and its successor, N.J.S. 2A:80-1. If one purpose of the statute was to protect a jury's right to return a general verdict and have it received notwithstanding a demand for special findings, nevertheless the statute seems to have lived in peace with Supreme Court Rule 110, adopted shortly thereafter by the Practice Act of 1912, L. 1912, c. 231, Rule 70, p. 397, which provided for the use of special verdicts in the discretion of the court (see Stiedler v. Penn. R.R. Co., 94 N.J.L. 197 (E. & A. 1920), certiorari denied 253 U.S. 489, 40 S.Ct. 485, 64 L.Ed. 1027 (1920)). Similarly, no collision with R.R. 4:50-1 or R.R. 4:50-2 has been reported previously. In any case, a conflict between N.J.S. 2A:80-1 and R.R. 4:50-1 or R.R. 4:50-2 would be resolved in favor of the court rules. Winberry v. Salisbury, 5 N.J. 240 (1950).
In addition to the special verdict procedure, the common law practice in New Jersey also permitted inquiry to be made of the jury on its return of a general verdict to ascertain the basis for the verdict and to be sure that the verdict gave expression to the jury's intent. Turon v. J. & L. Construction Co., supra, 8 N.J., at pp. 551-552. The use of interrogatories accompanying a general verdict also seems to have been recognized at common law in New Jersey. See Collins v. Whiteside, 75 N.J.L. 865, 867 (E. & A. 1907), where the court identifies this practice as "special findings of fact in response to interrogatories coupled with a general verdict." But only one case has been found, before R.R. 4:50-2 was in existence, where a jury was asked to return answers to interrogatories as *467 well as a general verdict. That case is Radin v. Creran, 106 N.J.L. 460 (E. & A. 1930).
Radin was an action on a promissory note against an indorser who raised the defense of misrepresentation, lack of notice of dishonor, and failure to exercise diligence in giving notice of dishonor. The court submitted to the jury four questions, and charged the jury that "certain questions will be put to you which you will answer, if you please, and they will have to do with the protest and with the diligence of the notary, and also with the `misrepresentations.'" 106 N.J.L., at p. 461. The jury found a general verdict in favor of defendant but did not answer any of the questions. The court's opinion and the record and briefs on appeal show that no exceptions were taken to the court's submission of the questions, and no objection was made to the return of the jury's general verdict without answers to the questions. On appeal it was contended that the trial court erred in receiving the general verdict without answers to the four questions. The Court of Errors and Appeals held that there was no merit to appellant's contention, and the judgment was affirmed. (No reasons or authorities were cited by the court for this decision, nor were any authorities cited for or against the proposition in the briefs submitted on that appeal.) It remains to be determined whether a different result should obtain under R.R. 4:50-2.
R.R. 4:50-2 was adopted in 1948 in terms identical to Rule 49(b) of the Federal Rules of Civil Procedure. As noted above, by that time the rule was well established in the federal and state courts that answers to interrogatories should be harmonized, if at all possible, with the general verdict. Compatibly with that rule, general verdicts have been upheld by many courts despite the jury's failure to answer one or more interrogatories, particularly where any answer that might have been given could be reconciled with the general verdict. The prevailing rule in the federal and state courts is that the failure to answer interrogatories will not invalidate the jury's general verdict where the questions involved could not have controlled the outcome of the case because the jury's *468 verdict could have been based on other issues in the case or because the unanswered questions were immaterial. Gulf Refining Co. v. Fetschan, 130 F.2d 129 (6 Cir. 1942), certiorari denied 318 U.S. 764, 63 S.Ct. 666, 87 L.Ed. 1136 (1943); Simpson v. Springer, 143 Ohio St. 324, 55 N.E.2d 418, 155 A.L.R. 583 (Sup. Ct. 1944); Watkins v. Mountain Home Co-op. Irr. Co., 33 Idaho 623, 197 P. 247 (Sup. Ct. 1921); Weck v. Reno Traction Co., 38 Nev. 285, 149 P. 65 (Sup. Ct. 1915); Russell v. Oregon R.R. & Nav. Co., 54 Or. 128, 102 P. 619 (Sup. Ct. 1909); Town of Wakefield v. Wakefield Water Co., 182 Mass. 429, 65 N.E. 814 (Sup. Jud. Ct. 1903); Schneider v. Chicago, Burlington & No. R.R. Co., 42 Minn. 68, 43 N.W. 783 (Sup. Ct. 1889); New York County Nat'l Bank v. American Surety Co. of N.Y., 69 App. Div. 153, 74 N.Y.S. 692 (App. Div. 1902), affirmed on memorandum 174 N.Y. 544, 67 N.E. 1086 (Ct. App. 1903); O'Connell v. United Railroads of San Francisco, 19 Cal. App. 36, 124 P. 1022 (Ct. App. 1912); Norwalk Truck Line Co. v. Kostka, 120 Ind. App. 383, 88 N.E.2d 799 (App. Ct. 1949); Smith v. Cushman Motor Delivery Co., 54 Ohio App. 99, 6 N.E.2d 594 (Ct. App. 1936); see also Diniero v. United States Lines Co., 288 F.2d 595, 599 (2 Cir. 1961), certiorari denied 368 U.S. 831, 82 S.Ct. 54, 7 L.Ed.2d 34 (1961); Ivey v. Phillips Petroleum, 36 F. Supp. 811 (D.C. Tex. 1941); Note, 14 Stan. L. Rev. 395, 398, fn. 9 (1962); 5 Moore, Federal Practice, supra, at p. 2212. The rule has applied where, as here, the jury gave no explanation of its failure to answer the interrogatory as well as where the jurors were unable to agree upon an answer.
In Gulf Refining Co. v. Fetschan, supra, the jury answered some interrogatories but were unable to agree upon answers to others. A general verdict for plaintiff was returned, and it was upheld. The Sixth Circuit Court of Appeals inferred that the damages awarded were based on the answers given and that no damages were awarded on the issues embraced by questions which were not answered. On that assumption the court held that the verdict was consistent with the answers *469 returned, and that even if the remaining questions had been answered favorably to defendant, a verdict for plaintiff could still have been returned on the other issues in the case. In its opinion the court cited with approval Weck v. Reno Traction Co., supra. In Weck the Supreme Court of Nevada held that a general verdict will be sustained where answers to the unanswered questions, if given, could not be inconsistent with the general verdict. That court relied, in part, on Schneider v. Chicago, Burlington & No. R.R. Co., supra, decided in 1889 by the Supreme Court of Minnesota. Minnesota was an early leader in the use of special jury findings, and its practice, with that of North Carolina and Texas, apparently served as a model for Rule 49 of the Federal Rules of Civil Procedure. McCormick, "Jury Verdicts upon Special Questions in Civil Cases," supra, 2 F.R.D., at pp. 178-179; Skidmore v. Baltimore & Ohio R.R. Co., supra, 167 F.2d, at p. 66. The Schneider case is a good illustration of the rule. It was a personal injury action with issues of negligence and contributory negligence. The jury was asked to answer a special question, "Did the engineer Minnehan sound his whistle before starting his engine, and after the conductor Reed had signalled to go ahead?" The jury failed to answer the question but returned a general verdict for plaintiff. In affirming the judgment on that verdict the court held that the question was not controlling. The evidence permitted the jury to find that the customary warning signal was a bell, not the whistle, so that a finding in favor of defendant on the special question was not decisive as to defendant's negligence or plaintiff's contributory negligence.
In Smith v. Cushman Motor Delivery Co., supra, the court submitted four questions to the jury dealing with factual issues as to the negligence and contributory negligence of the parties. The jury brought in a general verdict for plaintiff and returned the interrogatories unanswered. The jury was sent back to the jury room with instructions to answer the interrogatories but they again returned and stated they were unable to agree upon answers to the questions propounded. *470 The general verdict was accepted by the trial court and affirmed on appeal. The appellate court held that defendant's negligence could have been based upon facts to which three of the questions were not addressed and, therefore, it could not be said that answers to these questions, whatever they might have been, would have been irreconcilable with the general verdict. The fourth question dealt with contributory negligence of plaintiff's decedent, a passenger in a truck. An answer to this question would have been decisive. However, the court held that there was no evidence as a matter of law to be submitted to the jury on the issue of contributory negligence and, therefore, the failure to answer this interrogatory was immaterial. See also Russell v. Oregon R.R. & Nav. Co., supra, where the Supreme Court of Oregon sustained a general verdict although the jury reported its inability to agree on a special interrogatory submitted, saying it would be presumed that the jury based its verdict upon a ground other than the one concerning which the court requested a special finding.
A small group of cases hold more broadly that the general verdict will stand without regard to the controlling nature of the questions. Mayor & Burgesses of Devizes v. Clark, supra; Mackenzie v. British Columbia Elec. Ry. Co., Ltd., 21 B.C. 375 (Brit. Col. Ct. App. 1915); Florence Machine Co. v. Daggett, 135 Mass. 582 (Sup. Jud. Ct. 1883); Rohr v. Isaacs, 8 Or. 451 (Sup. Ct. 1880); see also Murray v. New York Life Ins. Co., 96 N.Y. 614 (Ct. App. 1884); Poor v. Madison River Power Co., 41 Mont. 236, 108 P. 645 (Sup. Ct. 1910). One reason given is that the request for special findings is a matter within the complete discretion of the trial court. Therefore, it has been held, the court may withdraw the questions before findings are rendered (Diniero v. United States Lines Co., supra, opinion by Circuit Judge Medina), or may accept the verdict without answers to the questions. Florence Machine Co. v. Daggett and Rohr v. Isaacs, supra; see also Poor v. Madison River Power Co., supra.
*471 On the other hand, it has been broadly held that the failure to answer interrogatories is in itself fatal to the general verdict returned, without relying upon the controlling nature of the questions. See Palmetto Fertilizer Co. v. Columbia, N. & L. Ry. Co., 99 S.C. 187, 83 S.E. 36 (Sup. Ct. 1914), where, although the questions appeared vital, the court simply said that the inability of the jury to agree on questions submitted casts doubt on the logical sequence of the general verdict. Cf. Allen v. Ellis, 191 Kan. 311, 380 P.2d 408 (Sup. Ct. 1963), an infant pedestrian automobile accident case. There the court invalidated a general verdict in favor of defendant because of the jury's failure to state whether defendant was negligent and, if so, in what manner. The court said the questions were material, despite the fact that the jury had specially found in answers to the preceding two questions that defendant was confronted with a sudden emergency and exercised due care in the circumstances to prevent the accident.
However, in most of the cases where a general verdict has been struck down the unanswered questions were controlling or were considered by the court essential to a determination of the case. In some cases the court held that the answers to the questions would have been "material and decisive," or "essential to and of controlling force in reaching a verdict." Eischen v. Chicago, Milwaukee & St. Paul Ry. Co., 81 Minn. 59, 83 N.W. 490 (Sup. Ct. 1900); Doom v. Walker, 15 Neb. 339, 18 N.W. 138 (Sup. Ct. 1884); Tober v. Pere Marquette R.R. Co., 210 Mich. 129, 177 N.W. 385 (Sup. Ct. 1920); Arkansas Midland R.R. Co. v. Canman, 52 Ark. 517, 13 S.W. 280 (Sup. Ct. 1890); Ebersole v. Northern Central R.R. Co., 23 Hun 114 (N.Y. Sup. Ct. 1880); Aetna Casualty & Surety Co. v. Niemiec, 172 Ohio St. 53, 173 N.E.2d 118 (Sup. Ct. 1961); Atchison, Topeka & Santa Fe Ry. Co. v. Hale, 64 Kan. 751, 68 P. 612 (Sup. Ct. 1902); Tourtelotte v. Brown, 1 Colo. App. 408, 29 P. 130 (Ct. App. 1892). Two cases will illustrate the above holdings. Tourtelotte v. Brown, supra, was an action on a promissory note where the *472 controlling issue was forgery. The jury was asked for a special finding on this issue but reported it could not agree. The court set aside the trial judge's acceptance of a general verdict in favor of defendant. saying that a finding on the issue of forgery was conclusive to any determination in the case and without it no verdict could be returned. In the Ebersole case, supra, the jury failed to agree on an essential fact that determined the issue of contributory negligence, and the court held that a general verdict should not have been received without the jury's agreeing on the question dealing with plaintiff's contributory negligence.
Thus, by the preponderant authority the mere failure to answer interrogatories is not absolutely fatal to the receipt of a general verdict. Even in cases holding that answers were essential to the receipt of a general verdict, the court recognized some of the principles sustaining the viability of a general verdict in the face of unanswered questions. For example, in Aetna Casualty & Surety Co. v. Niemiec, supra, the Supreme Court of Ohio distinguished and left standing its earlier decision in Bloor v. Platt, 78 Ohio St. 46, 84 N.E. 604 (Sup. Ct. 1908), where a general verdict was allowed to stand on the assumption that it was reached on grounds not embraced by the unanswered questions. See also Longstean v. Owen McCaffrey's Sons, 95 Conn. 486, 111 A. 788 (Sup. Ct. Err. 1920), where the court recognized the trial judge's discretionary right to withdraw the questions before, but not after, receipt of the general verdict.
Based upon the prevailing principles reviewed above the verdict in this case will stand. As stated at the outset, the questions put to the jury did not embrace the issue of contributory negligence. Even if the jury had answered the four questions in favor of plaintiff, those answers would not necessarily be inconsistent with the general verdict because the verdict could have been based on the issue of contributory negligence. Although some cases have held that a failure to agree upon a controlling question is destructive of or inconsistent with the general verdict, in the case at hand we have *473 no report of the jury's failure to agree upon answers to the questions  the jury simply returned them without saying why they were unanswered  nor do the questions embrace all of the controlling issues in the case.
Under R.R. 4:50-2 the court may enter a judgment based upon findings that are consistent with each other although inconsistent with the general verdict, or the court may grant a new trial. Thus, answers inconsistent with a general verdict have a qualified superiority over the general verdict. But the failure to answer interrogatories cannot be equated with the report of findings inconsistent with the general verdict. Here we simply do not know on what basis the jury decided the case, just as in the ordinary general verdict case without interrogatories we do not know the basis for the jury's verdict. In either instance the validity of the jury's verdict will be presumed.[12]
Some authorities hold the view that the jury's failure to agree on the answer to a question means the party with the burden of proof on that issue has failed to carry that burden. Murphy v. Overlakes Freight Corp., 177 F.2d 342, 344 (2 Cir. 1949), certiorari denied 339 U.S. 913, 70 S.Ct. 573, 94 L.Ed. 1339 (1950); Masters v. New York Central R.R. Co., 147 Ohio St. 293, 70 N.E.2d 898 (Sup. Ct. 1947), certiorari denied 331 U.S. 836, 67 S.Ct. 1519, 91 L.Ed. 1848 (1947); Thayer v. Denver & Rio Grande R.R. Co., supra; May v. Szwed, 68 Ohio App. 459, 39 N.E.2d 630 (Ct. App. 1941); Smith v. Cushman Motor Delivery Co., supra; Note, 14 Stan. L. Rev., supra, at p. 398. Some have gone so far as to hold that a general verdict will stand although the requisite number of jurors do not follow the same path in reaching that verdict so long as they agree on the ultimate conclusion in the case. Walton v. Potter, supra, 3 Man. & G., at p. 444; Murray *474 v. New York Life Ins. Co., supra, 96 N.Y., at p. 622; Arkansas Midland R.R. Co. v. Canman, supra. However, persuasive authorities support the view, expressed or implied in various cases cited above where general verdicts were invalidated, that a failure to agree on a controlling issue results in a hung jury. See Tober v. Pere Marquette R.R. Co. and Russell v. Oregon R.R. & Nav. Co., supra, where the court held that a verdict should be based upon a ground on which all jurors agree, and if the jurors fail to reach agreement on the answer to an interrogatory, the effect is to eliminate from the case the matter embraced in the interrogatory as a substantive basis for the verdict. See also Malinauskas v. Public Service Interstate Transp. Co., 6 N.J. 269, 272 (1951).
These cases reveal the primary difficulty encountered in the use of special findings. Often jurors can readily agree upon the ultimate result in a case, finding for or against a party. However, the requisite number of jurors may not be able to agree on the separate findings of fact through which the general verdict should be reached. In the usual case, without special findings, this difficulty is concealed, and the verdict is accepted.
The approach of a court to the use of special findings will depend in part on the degree to which it accepts the philosophy that jurors should be free to express flexibly their composite judgment of where the ultimate burden of responsibility should fall in a given set of circumstances. This flexibility in the application of the law has been said to be "essential to justice and popular contentment." Wigmore, "A Program For the Trial of Jury Trial," 12 Am. Jud. Soc. 166, 170 (1929). Professor Moore, 5 Moore, Federal Practice, supra, at p. 2217, has said,
"The general verdict is the answer from the man in the street. If on occasion the trial judge thinks the jury should be quizzed about its overall judgment as evidenced by the general verdict, this can be done by interrogatories accompanying the general verdict. But if there is sufficient evidence to get by a motion for directed verdict, then the problem is usually best solved by an overall, common judgment of the jurors  the general verdict."
*475 The case at hand concerns a fall allegedly on a slippery substance. Bree's injuries were permanently crippling, and his medical expenses and loss of earnings were very high. Just as the consequences of his fall were tragic for Bree, imposition of a judgment upon defendants for the full burden of that loss could have been financially tragic for them. Although the court might have decided this case differently, this was a case particularly suited for a jury's determination, certainly as to the issue of contributory negligence. The facts and law in such a case are so adhered as to suggest that by allowing the jury to decide the case we, in effect, leave it to the jury to make the law for that set of circumstances. (For a similar case see Bates v. Valley Fair Enterprises, Inc., 86 N.J. Super. 1 (App. Div. 1964).) This is not to say that 12 jurors who witness a courtroom drama of facts and are suddenly exposed to intricate propositions of law will report with scientific precision their findings on mixed questions of fact and law. But there are a number of advantages to having a jury decide this kind of case, so long as liability is in issue. To compensate for inherent shortcomings, certain presumptions must be indulged if we are to live with the jury system.
Circuit Judge Frank, in Skidmore v. Baltimore & Ohio R.R. Co., supra, 167 F.2d, at p. 67, condemned the opacity of a general verdict and advocated that the use of special verdicts and interrogatories coupled with a general verdict should be made mandatory by federal rule. It is interesting to note, however, that several months later Judge Frank wrote the opinion in Bolan v. Lehigh Valley R.R. Co., supra, a case where special findings were used. That case affirmed a verdict for plaintiff despite the jury's seemingly conflicting special findings on a decisive issue that (a) the railroad company did furnish plaintiff a safe place to work, and (b) the engine and its appurtenances, including the pilot step, were not in a safe condition. It was there held that the more specific finding of a defective step was a qualification of the general finding that the place to work was safe. More recently, in Gallick v. Baltimore & Ohio R.R. Co., supra, the *476 United States Supreme Court by a 6-3 vote reconciled special findings that (a) defendant was negligent, and (b) the mishap was unforeseeable. So it seems that occasionally answers to written interrogatories tend to undermine the presumption of validity of the jury's reasoning, forcing the courts to substitute other legal rules in order to produce a verdict that will terminate the litigation. Perhaps it is these experiences that have motivated Professor Maurice Rosenberg to advocate recently that written interrogatories should be given to juries to help them in their deliberations, without requiring them to report their answers. XIX, No. 10 Columbia Law School News 10 (Mar. 23, 1965); cf. R.R. 4:52-2.
It is the general law of New Jersey that a jury's verdict is presumptively valid and "all reasonable intendment will be indulged in its support." Malinauskas v. Public Service Interstate Transp. Co., 6 N.J. 269, 277 (1951); Rossman v. Newbon, 112 N.J.L. 261 (E. & A. 1934); Lampert v. Mikos, 22 N.J. Super. 155, 161 (App. Div. 1952). The presumption is that the verdict was obedient to the court's charge. Moore v. Public Service Coordinated Transp., 15 N.J. Super. 499, 510 (App. Div. 1951). The mere possibility of error is not enough to warrant a new trial, which in this case would be a third trial for defendant Jalbert. Nylander v. Rogers, 41 N.J. 236, 242 (1963). See also Grassi v. Pennsylvania R.R. Co., 86 N.J. Super. 48 (App. Div. 1964), and Brendel v. Public Service Elec. and Gas Co., 28 N.J. Super. 500 (App. Div. 1953), for examples of the reconciliation of seemingly inconsistent verdicts in order to sustain the jury's verdict. Despite constant criticism of the use of juries, some evidence has been gathered in recent years to suggest that presuming the validity of a jury's verdict is not misplaced, at least to the extent that in most cases the results on liability would not be different if the case had been tried by a judge alone. Broeder, "The University of Chicago Jury Project," 38 Neb. L. Rev. 744, 750 (1959).[13]
*477 Plaintiff argues that no matter what the jury found on the facts and the law, the jury was not obedient to the court's requirement that answers to the interrogatories be returned with the general verdict. It may be said that R.R. 4:50-2 imposes a mandatory duty on the jury to return answers to interrogatories, at least to the extent that a trial judge has the right in his discretion to refuse to accept a general verdict without such answers. The uncomfortable doubt created by the jury's conduct could have been resolved upon the return of the general verdict by the court's interrogation as to the basis of the verdict. See Turon v. J. & L. Construction Co., supra, 8 N.J., at pp. 551-552. This would have been desirable, although it is a matter of discretion for the trial judge. Russell v. Oregon R.R. & Nav. Co., supra. However, the use of interrogatories is a matter of procedure, not substance. Walker v. New Mexico & So. Pac. R.R. Co., supra. Accordingly, the jury's violation of a procedural requirement should not invalidate a verdict which is presumptively valid as to its substance. A verdict defective in form should be made to conform to the intent of the jury as to its substance. Rillo v. Eastern Carrier Corp., 132 N.J.L. 414 (E. & A. 1945); Smith v. Phoenix Indemnity Co., 119 N.J.L. 522 (E. & A. 1938); see Poland v. Parsekian, 81 N.J. Super. 395 (App. Div. 1963), certification denied 41 N.J. 520 (1964); Weck v. Reno Traction Co., supra, where the court upheld a general verdict without answers to interrogatories, under a statute providing for the mandatory submission of interrogatories on request of a party; and see also Smith v. Cushman Motor Delivery Co. and Aetna Casualty *478 & Surety Co. v. Niemiec, supra, dealing with interrogatories submitted under a mandatory rule in Ohio.
Moreover, plaintiff's failure to object to the receipt of the general verdict at the time it was returned precludes him from later contending that this alleged procedural error justifies a new trial. Malinauskas v. Public Service Interstate Transp. Co., supra, 6 N.J., at p. 276; Gluckauf v. Pine Lake Beach Club, Inc., 78 N.J. Super. 8, 18 (App. Div. 1963); Schueler v. Strelinger, 43 N.J. 330, 336 (1964); R.R. 4:47; Simpson v. Springer and Smith v. Cushman Motor Delivery Co., supra; Flusk v. Erie R.R. Co., supra, 110 F. Supp., at p. 125; Annotation, "Failure of one or more jurors to join in answer to special interrogatory or special verdict as affecting verdict," supra, 155 A.L.R., at p. 602. If the claim of error had been timely made known to the court, the court could have taken steps to cure the alleged error. Therefore, plaintiff's application to have the jurors recalled now will not be granted. The time to cure a procedural defect is when it happens. See Roberts Elec. Inc. v. Foundations & Excavations, Inc., 5 N.J. 426, 431-432 (1950). When the court, without objection, has accepted a general verdict despite unanswered interrogatories the jurors, who have returned to the community at large, should not be recalled for examination on the basis for their verdict. Poor v. Madison River Power Co., supra; see also State v. LaFera, 42 N.J. 97, 106 (1964); R.R. 1:25A; Skidmore v. Baltimore & Ohio R.R. Co., supra, 167 F.2d, at p. 60.
Nor was the purpose for submitting the interrogatories to the jury frustrated in the case at hand. The answers to the questions were essential to a resolution of issues based upon a verdict in favor of plaintiff. These issues, described above, dissolved when the verdict was returned in favor of defendant. The court no longer had to deal with the motion for judgment in favor of defendant on the issue of defective lighting. To this extent the purpose of R.R. 4:51-2(a) was served. The verdict against plaintiff also eliminated all issues on the third-party action.
*479 The jurors were charged that they could find in favor of the plaintiff only if they found one or more defendants negligent and that plaintiff was not contributorily negligent. They were instructed that if they found plaintiff contributorily negligent, that would end the case and they should return a verdict of no cause for action. This might explain the conduct of the jury in not returning answers to the interrogatories which dealt only with the negligence of the defendants. See Russell v. Oregon R.R. & Nav. Co., supra, and Cheffey v. Pennsylvania R.R. Co., 79 F. Supp. 252, 254 (D.C. Pa. 1948), where the jury answered certain interrogatories and the court held it would be presumed that on issues not covered by the interrogatories the jury made findings consistent with its verdict. See also Skidmore v. Baltimore & Ohio R.R. Co., supra, 167 F.2d, at p. 55. Although it has been said that the issue of contributory negligence arises only after a finding of negligence,[14] a jury should be permitted to return a verdict of no cause for action if they can agree that plaintiff was contributorily negligent, even if they have not reached agreement on defendant's negligence or its causal relationship to the accident. See Stalder v. Bowen, 373 S.W.2d 824 (Tex. Ct. App. 1963).
In sum, the mere failure of a jury to answer interrogatories not embracing issues which alone could control the verdict will not invalidate a jury's general verdict. Whether or not defective in form or procedure, the jury's verdict on the substance will be presumed valid where the interrogatories do not embrace all controlling issues. The failure to answer some or all of the interrogatories is not equivalent to a finding inconsistent with the general verdict. Moreover, in the absence of an objection to the receipt of the general verdict when it was returned, plaintiff is barred from seeking a new trial because of unanswered interrogatories.
Accordingly, the motion for a new trial is denied.
NOTES
[1] Plaintiff also contended that the verdict was against the weight of the evidence or was the result of mistake, partiality, prejudice or passion. At oral argument the court denied the motion to the extent that it was based on these contentions.
[2] Mr. Nord, a tenant in the same development, testified on behalf of Jalbert. He was in the apartment of plaintiff's neighbor, Mr. Hadley, at the time plaintiff fell. With apparent reluctance Mr. Nord testified that he was under the impression that immediately after the accident plaintiff said he had attempted to jump over the water.
[3] Under R.R. 4:51-2(a) a judgment could have been entered later as a matter of law on the issue of the causal relationship between the lighting and plaintiff's fall, notwithstanding the jury's verdict. Reserving judgment on this motion seemed desirable in the case at hand. See Mijon v. Acquaire, 51 N.J. Super. 426, 445 (App. Div. 1958), certification denied 28 N.J. 146 (1958).
[4] Prosser expresses the rule as follows: "* * * the contractor is not liable if he has merely carried out carefully the plans, specifications and directions given him, since in that case the responsibility is assumed by the employer, at least where the plans are not so obviously defective and dangerous that no reasonable man would follow them."
[5] R.R. 4:50-2 provides:

"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and verdict, or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial."
[6] Terminal Const. Corp. v. Bergen County, etc., Dist. Authority, 18 N.J. 294, 319 (1955); Marchese v. Monaco, 52 N.J. Super. 474, 485-486 (App. Div. 1958), certification denied 28 N.J. 565 (1959); and see Nylander v. Rogers, 41 N.J. 236, 240 (1963).
[7] See Annotation, "Failure of one or more jurors to join in answer to special interrogatory or special verdict as affecting verdict," 155 A.L.R. 586 (1945); Annotation, "Withdrawal of written special interrogatories or special questions submitted to jury," 91 A.L.R.2d 776 (1963); and as to the use of special verdicts as well as interrogatories accompanying a general verdict, see 5 Moore, Federal Practice (2d ed. 1964), c. 49, p. 2201 et seq.; 2B Barron & Holtzoff, Federal Practice and Procedure (Wright ed. 1961), c. 10, p. 326 et seq.
[8] Two were a general verdict preceded or followed by a statement of the factual basis for the verdict, and two were a statement of factual findings followed by a conclusion that the jury cannot reach a general verdict, or followed with a request that the judges draw conclusions constituting a general verdict. In one form the jury returned a statement of factual findings without any reference to the ultimate conclusions to be drawn as a matter of law.
[9] Morgan, supra, 32 Yale L.J., at pp. 591-592. In fact, in that case the justice indicated his intention of entering judgment upon the answer to his inquiry rather than upon the general verdict of the jury.
[10] Both cases deal with a demand for special findings coupled with a general verdict, as distinguished from a special verdict. Notwithstanding the holdings that without its consent the jury may not be required to make special findings, McCormick in "Jury Verdicts upon Special Questions in Civil Cases," 2 F.R.D. 176 (1943), reports that special verdicts have continued in common use in England. However, it must be remembered that trial by jury in civil cases is seldom used in England today. See Skidmore v. Baltimore & Ohio R.R. Co., 167 F.2d 54, 56 (2 Cir. 1948), certiorari denied 335 U.S. 816, 69 S.Ct. 34, 93 L.Ed. 371 (1948).
[11] Ill. Ann. Stat., c. 110, sec. 65, Civ. Prac. Act; Ind. Ann. Stat., sec. 2-2022; Iowa R. Civ. P. 206, 58 I.C.A.; N.M. Stat. Ann., 21-1-1 (49); Ohio Rev. Code Ann., sec. 2315.16; R.I. Gen. Laws Ann., sec. 9-20-3. Cf. Note, 47 Va. L. Rev. 1439, 1440 fn. 6 (1961).
[12] In Mackenzie v. British Columbia Elec. Ry. Co., Ltd., supra, despite the jury's report of its inability to agree on answers to questions dealing with the issues of negligence, contributory negligence and proximate cause, the court accepted a general verdict for plaintiff, saying that it would be assumed that the jury acted properly unless there is clear evidence to the contrary.
[13] Results from 1,500 questionnaires in personal injury cases, with 500 judges throughout the United States cooperating, show that the judge and jury agreed on the issue of liability in 83% of the cases. In 9% of the cases the jury found for plaintiff but the judge for defendant, and in 8% of the cases where the judge found for plaintiff the jury found for defendant. Thus, in only 1% of the cases did the jury find for plaintiff more often than the judge. The jury's alleged bias for plaintiff's is somewhat contra-indicated by the fact that they found for plaintiffs in 58% of the cases and the judge found for the plaintiffs in 57% of the cases.
[14] See Kulbachi v. Sobchinsky, 38 N.J. 435, 452 (1962); Pangborn v. Central R.R. Co. of N.J., 18 N.J. 84, 102 (1955).